# OCTOBER, 1939.

REYNOLDS CHAMBERS AND JAMES D. POUNCEY, RESPONDENTS, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT. —138 S. W. (2d) 29.

Kansas City Court of Appeals. January 29, 1940.

886

*William C. Michaels, Kenneth E. Midgley* and *Ralph M. Jones* for appellant.

*Harry Cole Bates* and *Michaels, Blackmar, Newkirk, Eager & Swanson* of Counsel.

*Harry A. Hall* and *James D. Pouncey* for respondents.

BLAND, J.—This is a suit on a policy of endowment insurance. Plaintiffs are the assignees of the beneficiary under the policy. There was a verdict and judgment in favor of plaintiffs in the sum of $4302.56. Defendant has appealed.

The facts show that on the 23rd day of July, 1924, in the State of Kansas, defendant issued to one, Albert L. Mason, the policy in question, agreeing to pay $5000 to the insured, if living, on the 23rd day of July, 1971, or, to Gertrude Mason, his wife, as beneficiary, "upon receipt of due proof of the prior death of insured." The policy further provided: "This policy shall be incontestable after it has been in force for a period of two years from its date of issue, except for nonpayment of premiums. . . . This policy and the application therefor constitute the entire contract between the parties, and all statements made by insured, shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this Policy or be used in defense of a claim hereunder unless it be contained in the application therefor and a copy of such application is attached to this Policy when issued. . . . If this policy shall lapse in consequence of default in payment of any premiums, it may be reinstated at any time . . . upon the production of evidence of insurability satisfactory to the Company and the payment of all overdue premiums with interest at six per centum

to the date of reinstatement." [See also Gen. Stat. Kan. 1935, section 40-420, requiring such provisions to be inserted in policies issued or delivered in Kansas.]

On the 26th day of January, 1936, the policy lapsed for nonpayment of premiums and was placed by the company on "paid up insurance." on May 2, 1936, insured applied for reinstatement of the policy upon a reinstatement blank furnished by the company. The application for reinstatement contained the following questions and answers, among others, made by him: "3. Are you now in sound health? Yes. 5. Have you since date of issue of the above policy (a) Had any illness or injury? If yes, give date and particulars: (a) No. (b) Consulted any physician or physicians? If yes, give date, and name and address of physician or physicians, and state for what illness or ailment. (b) No." There were questions relating to flying in aircraft and other matters, which are not material here. However, there appeared the following language in the application:

"Application is hereby made for the reinstatement of the above policy which lapsed for nonpayment of premium due as stated above. I hereby certify that the foregoing statements and answers are correct and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy, and I agree that if said company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this request and upon the express condition that if the foregoing statements be in any respect untrue said company shall, for a period of two years, from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement."

Insured died on April 6, 1937.

The policy was reinstated upon this application. That part of the proofs of death signed by the beneficiary mentioned Dr. Zimmer, Lawrence, Kansas, as one of the physicians who had attended deceased during his last illness and for three years prior thereto. The physician's statement, attached to the proofs of death, signed by Dr. Zimmer, contains, among other things, the following: "Q. Give particulars of each condition for which you treated or advised deceased prior to last illness: Nature of condition: Gonorrhea. Date: 3-1-36. Duration: to October, 1936. Result: cured."

Dr. Zimmer, testifying as a witness for defendant, over the objection of plaintiffs, stated that insured came to him on February 29, 1936, at which time he found insured was suffering from gonorrhea; that he treated him for this ailment every three days during March and April; that he treated him seven times in March and three times in April; that he finally discharged insured as cured, in October,

1936; that he treated him intermittently from February 29, 1936, until October of the same year; that he told insured the latter was suffering from gonorrhea on the occasion of the latter's first visit; that on April 20, 1936, insured did not have any discharge and he told him "I hoped that was the end of it. I did not say he was all right, because nobody treating gonorrhea would make a statement of that kind. The patient should be kept under observation, but I believe I did say when I discharged him that I hoped that was the end of it. . . . I told him to come back because while he had no more discharge we don't let a patient go then, we keep them under observation because recurrences happen very frequently, and we think it is not good practice to just let a patient go;" that on April 25, 1936, he treated insured for a stricture of the urethra, but the witness was of the opinion that this stricture was not due to the recent gonorrhea infection but was due to an "old inflammation or infection;" that deceased came back at certain intervals for treatments for the stricture; that stricture is not regarded as a serious disease or illness; that on August 21, 1936, a discharge again appeared and, upon an examination, the doctor found insured to be suffering from gonorrhea; that: "Of course, it might have been a reinfection, but I don't think that;" that on April 20th, when the doctor stated to insured that he hoped that was the end of insured's trouble, he was of the opinion that "it was not an unusual case. There wasn't any—I wouldn't say either light or severe, moderate, I would say."

The witness further testified that in medicine gonorrhea is not considered serious; "the primary infection is not regarded as serious. It is the after effects or the complications of gonorrhea which can become very serious. Q. And those after effects or complications are not apt to occur if it is taken care of at its inception, is that right, doctor? A. If it is taken care of properly it is not serious. Q. Was there any after effects in Mr. Mason's case as the result of gonorrhea? A. No."

Insured died from Hodgkin's carcinoma or tuberculosis of the mesentery gland. Dr. Zimmer testified that the gonorrhea for which he treated insured did not contribute to his death.

In accordance with certain nonforfeiture provisions of the policy, defendant tendered in its answer, and offered to pay to such person or persons as the court might direct, the amount of the premium paid after the lapse of the policy, plus the sum of $42 as paid up endowment insurance, there being a loan of $891.17 against the policy at the time of the lapse, or a total of $149.07. This sum plus interest was deposited with the court prior to the trial. It was admitted that the amount tendered represented the amount of paid-up insurance on which the policy was placed after its lapse in January, 1936, plus the amount of the premium after the reinstatement, in cash. No con-

tention is made in the briefs in regard to this matter. It was also agreed that all premiums on the policy were either paid by cash or loan to the date of the death of insured and that the policy was properly in force on the date of the death of insured outside the question of the reinstatement, which defendant insists was void as having been fraudulently obtained.

At the request of the plaintiffs, the court gave plaintiffs' instructions A and B. Instructions A told the jury, among other things: "If you further find that Albert L. Mason did not wrongfully induce the defendant to reinstate the policy and did not misrepresent any facts or matters in his application for reinstatement, which contributed to his death, then your verdict should be in favor of the plaintiff."

Instruction B told the jury: "You are instructed that one of the defenses relied upon by the defendant is that Albert L. Mason made untrue answers in the application for reinstatement to questions concerning his sound health at the time the application was made, and whether he had consulted any physician or had any illness since the policy was issued, and in this connection you are instructed that the defendant had the burden of proving that Mason made such misrepresentations and that the matters misrepresented actually contributed to his death, and even though you may find that Mason made such answers, and that they were untrue, yet if you further find that the matters and facts thus misrepresented did not actually contribute to cause his death, then such misrepresentations are no defense under the law and your verdict on this issue should be in favor of the plaintiffs."

Both parties pleaded the law of Kansas and it is agreed that it, as interpreted by the Supreme Court of that State, controls the disposition of this case as to matters of the substantive right of the parties. [See, also, New York Life Ins. Co. v. McCurdy, 106 Fed. (2d) 181.]

Defendant insists that the court committed error in the giving of plaintiffs' Instructions A and B. These instructions undoubtedly were drawn on the theory that the Kansas misrepresentation statute applies to applications for reinstatement. This statute reads as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void, unless the matters misrepresented shall have actually contributed to the contingency, or the event on which the policy is to become due and payable." [See Gen. Stat. Kan. 1935, section 40-418.]

Defendant insists that this statute does not apply to applications for reinstatement, citing in support thereof, Brown v. Metropolitan Life Insurance Company, 146 Kan. 300. On the other hand, plaintiffs contend that the decision in the Brown case is not to be so

construed; that this case is governed by the case of National Reserve Life Insurance Company v. Humphrey, 145 Kan. 373.

There is language in the Humphrey case, which may be construed as holding that the Kansas misrepresentation statute applies to applications for reinstatement. However, the court, before so indicating, stated that the insured in that case had made no misrepresentation in his application for reinstatement. If the Humphrey case is to be construed as a decision that the misrepresentation statute of Kansas applies to reinstatement applications, we think it is overruled by the Brown case. The opinion in the Brown case expressly holds that the statute has no application to reinstatement applications. However, plaintiffs contend that what the court said in that case, in reference to the inapplicability of the statute to reinstatement applications, is *obiter dictum* for the reason that, in that case, insured died as the result of tuberculosis, and the undisputed facts show that he had tuberculosis at and before the time of his application for reinstatement, of which he knew. Consequently, plaintiffs contend that insured, in that case, was guilty of fraud in misrepresenting his condition at the time of the reinstatement, which representation was of a disease that directly caused his death and the court, having found that he was guilty of fraud as a matter of law, relating to a matter which contributed to his death, the statement, in the opinion that the statute was inapplicable was immaterial and outside of the issues. In examining the opinion in that case we find that the court, in this connection, commenting upon the testimony of one of the physicians, stated l. c. 305:

"The fact that one of the physicians who made three of the above certificates attempted to explain away the importance of the term '*pulmonary* congestion' by saying Brown had recovered from it and died from *miliary* tuberculosis and anemia cannot be held to present a question for the jury. *Even assuming that fact to be true*, the company was entitled to know that Brown had claimed to be ill and has consulted physicians, one of whom diagnosed his difficulties as pulmonary congestion with bleeding, bilious, anemia, and the other of whom stated he had pulmonary tuberculosis. . . . . . . .

"Appellee directs our attention to G. S. 1935, section 40-418, and contends that under it no misrepresentation shall be deemed material or render the policy void unless the matter represented actually contributed to the death, and that the proof here is that it did not. *That statute refers to original issue of the policy; here we are limiting the inquiry to the application for reinstatement.*" (Italics ours.)

It will thus be seen that, the court, for the purpose of disposing of the case, assumed it to be true that the insured did not die of the specific ailment he was suffering from prior to the time he made his application for reinstatement. We do not think that the holding of

the court that the statute in question had no application is to be classified as *dictum*. [13 C. J., pp. 952, 953.]

Plaintiffs' instructions were erroneous under the Law of Kansas.

However, plaintiffs contend that, as deceased died more than two years after the issuance of the policy, it became incontestable under the incontestable clause in the policy. Even though plaintiffs' instructions were erroneous, if the verdict was for the right party, and plaintiffs were entitled to recover as a matter of law, the judgment should be affirmed. [See Renshaw v. Reynolds, 317 Mo. 484; Eisen v. John Hancock Ins. Co., 91 S. W. (2d) 81.] We shall, therefore, inquire into the question as to whether there can be a defense to the suit on the ground that the reinstatement was obtained by fraud, in view of the incontestable clause in the original contract or policy.

Defendant insists that the incontestable clause in the policy cannot be applied because such "clauses can be applied to transactions occurring after they have expired only in the same way they apply to the original policy, by limiting the period thereafter for investigating and contesting the same. If they should be held to bar any question of fraud thereafter, they would of course be void as against public policy in relieving a party of the consequences of their own fraud."

It has been held in some cases that incontestable clauses will not be upheld if they begin to run from the date of the policy, so as to deprive the company of the right to contest for fraud, for to uphold them, under such circumstances, would be against public policy. However, these clauses are held in such cases to be valid if they allow the company a reasonable time for investigating the matter and to determine if there has been a fraud, in the interest of repose and security, analogous to Statutes of Limitation. [Reagan v. Union Mut. Life Ins. Co., 189 Mass. 555; Welch v. Union Central Life Ins. Co., 108 Ia. 224; Prudential Life Ins. Co. v. Mohr, 185 Fed. 936; New York Life Ins. Co. v. Waterman, 104 Fed. (2d) 990; 8 Couch, Cyc. of Ins. Law, pp. 6955, 6956, 6959.]

Other cases hold to the effect that incontestable clauses are valid which, by their terms, become immediately effective, as where, they make the policy incontestable from the date of its issuance. This is on the theory that the company has ample time to investigate the question of fraud before issuing the policy. [See 8 Couch, Cyc. of Ins. Law, pp. 6958, 6959, 6960.] This would seem to be the law in Kansas [Priest v. Kansas City Life Ins. Co., 119 Kan. 23, 28.]

Some courts hold that a reinstatement is a new contract and that the incontestable clause in the original policy does not apply to reinstatements. Other courts hold that the reinstatement of a policy effects a new contract of insurance as of the date of the reinstatement but containing all of the terms of the original contract and that the time fixed in the incontestable clause begins to run anew when the

policy is reinstated. Others hold that where the policy has been forfeited and reinstated, it is not a new contract but the policy continues and the incontestable clause in the policy begins to operate on the date it is reinstated. Some hold that the reinstatement effects simply a waiver of the forfeiture and restores the policy and makes it effective as though no forfeiture had occurred, preserving the right to the company to avoid the effect of the reinstatement by showing it was induced by fraud. Some courts hold, under the doctrine, that fraud vitiates every contract, that where the reinstatement of the policy is induced by fraud, there is, in fact, no reinstatement. [Mass. Benefit Life Ins. Co. v. Robinson, 104 Ga. 256; Chuz v. Columbia Nat'l. Life Ins. Co. (N. J.), 162 Atl. 395; Alper v. New York Life Ins. Co., 41 Fed. (2d) 956; Welch v. Union Central Life Ins. Co., *supra*; Prudential Life Ins. Co. v. Morh, *supra*; State Mutual Life Ins. Co. v. Rosenberry (Tex.), 213 S. W. 242. See, also, 6 Couch, Cyc. of Ins. Law, pp. 4940, 4964, 4965, 4966, 4967; 94 A. L. R., pp. 1200 to 1206, inclusive.]

In some cases, where it is held that the reinstatement amounts to a revival of the policy, it is said that the incontestable clause covers the whole contract, including the reinstatement; that where the incontestable period has elapsed the policy, even if reinstated, is not contestable, but this has no application to fraud in the procurement of the reinstatement.

In Tantum v. Guardian Life Insurance Company, 73 Fed. (2d) 476; 98 A. L. R. 341, 344, it is stated: "Though the new contract be a reissue of the policy as of the date of the renewal, it would force beyond all reason the meaning of the incontestability clause to say that it barred a fraud which did not event exist when the policy became incontestable. The clause is one of limitation, not a license forever to cheat the insurer; unless construed in that preposterous way it must be an exception to the general principle that the policy as reinstated speaks from its old date. It may be the only exception, at least the suicide clause is not one."

In Missouri the reinstatement is a new contract. [State ex rel. v. Shain, 334 Mo. 385; Jenkins v. Mutual Life Ins. Co., 171 Mo. 375.] However, it would appear that, in Kansas, the holding is that the reinstatement effects merely a waiver of the forfeiture and continues the policy. [See Brown v. Metropolitan Life Ins. Co., *supra*.]

It is provided by section 40-420, Gen. Stat. Kan. 1935, that no insurance company shall issue or deliver a policy of life or endowment insurance in that State unless the same shall contain a provision that in the event of a default in the payment of the premiums the policy shall be reinstated within three years of such default, upon evidence of insurability satisfactory to the company and that "Such reinstated policy shall be contestable only on account of fraud or misrepresentation of material facts pertaining to the reinstatement;

for the same period of time after reinstatement as provided in the policy with respect to original issue."

The policy and the application for reinstatement in the case at bar must be read and construed in the light of the statute. [Rosenthal v. Monarch Life Ins. Co. (Mass.), 195 N. E. 339; American Nat'l. Ins. Co. v. Tabor (Tex.), 230 S. W. 397.] There is no contention that the application for reinstatement does not substantially comply with the statute and the court in the Brown case seems to have thought that a like application did so, although not directly passing upon the matter.

We have been unable to find but one State in which it is held that the company may not defend on the ground that the application for reinstatement of the policy was procured through fraud because the incontestable period provided in the original contract or policy has expired. [See New York Life Ins. Co. v. Campbell (Ark.), 83 S. W. (2d) 542; Illinois Bankers Life Ass'n. v. Hamilton (Ark.), 67 S. W. (2d) 741.] We are not impressed with the reasoning of the Supreme Court of Arkansas in these cases. This is especially so in reference to the statement of the court l. c. 544, in the Campbell case, quoting from the Hamilton case, as follows:

"There was no requirement in the original contract that the answers to the questions in the application for a reinstatement should be true, and a condition precedent to the reinstatement of the policy and to its validity when so reinstated," and consequently the company could not defend. This statement is contrary to the generally accepted doctrine relating to fraud. [See Houston v. Metropolitan Life Ins. Co., 97 S. W. (2d) 856; Doran v. John Hancock Mutual Life Ins. Co., 116 S. W. (2d) 172; Brown v. Met. Life Ins. Co., *supra*.]

By virtue of the last quoted provision of the Kansas statutes, as well as the common law, the reinstatement is contestable on the ground of fraud. We are, thereof, of the opinion that fraud in the procurement of the reinstatement in this case is a defense.

However, plaintiffs contend that the application for the reinstatement sent the company by the agent was not that of insured. The facts in this connection are as follows:

Defendant put upon the stand its agent, who testified that he asked insured every question contained in the blank form application and that he wrote down the answers in the application as insured gave them. In rebuttal, plaintiffs showed, by insured's son, that, while the agent discussed these matters with insured, he did not ask him the direct questions contained in the application. But, as we view the testimony of insured's son, the agent talked over with insured the matters contained in the application and inserted in the application the information given him by insured. Under such circumstances, we feel that, even under the testimony of the son, insured was bound by the answers given in the application, although he did not read

it before signing it, and that Sappington v. Central Mutual Insurance Association, 77 S. W. (2d) 140, and like cases, cited by plaintiffs, are not in point.

It is further stated by plaintiffs that there was no evidence tending to prove that the statements made by insured in the application were false. In this connection it is stated that the testimony of Dr. Zimmer was incompetent.

The testimony of Dr. Zimmer was objected to on the ground that it called for a privileged communication. The objection was over-ruled. Whether the testimony was competent we do not pass upon at this time.

There is a controversy between the parties as to what constitutes a misrepresentation amounting to fraud, as applied to the facts in this case. In this connection plaintiffs call our attention to a pro-visions of the policy, inserted in compliance with section 40-420, Gen. Stat. Kan. 1935, reading as follows:

"This policy and the application therefor constitute the entire contract between the parties, and all statements made by Insured, shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this Policy or be used in defense of a claim hereunder unless it be contained in the applica-tion therefor and a copy of such application is attached to this Policy when issued."

It appears that the St. Louis Court of Appeals was of the opinion in DeValpine v. New York Life Ins. Co., 105 S. W. (2d) 977, that the first part of a like clause applies to reinstatements but that the last part could not. But see on the point as to whether either part is applicable, Reidy v. John Hancock Mutual Life Ins. Co., 245 Mass. 373.

Whether the provision in question contained in the policy applies to representations appearing in the application for reinstatement, we need not say, for if it does, it is no less onerous upon insured than the rule to be applied, if it does not. [4 Cooley's Briefs on Ins. (2 Ed.), pp. 3277 to 3800, 3791; 4 Couch, Cyc. of Ins. Law, pp. 2635, 2636, 2639, 2640, 2662; 8 Couch, Cyc. of Ins. Law, p. 6971; 6 Couch, Cyc. Ins. Law, p. 4958; Brown v. Metropolitan Life Ins. Co., *supra*; Dorna v. John Hancock Mut. Life Ins. Co., *supra*.]

The policy, itself, provides that should it lapse by reason of default in the payment of premiums, it might be reinstated "upon the pro-duction of evidence of insurability satisfactory to the Company," etc. It has been held that the right of reinstatement is not a gratuity extended by the company to the insured and that it cannot require a new contract in the reinstatement application more onerous on the insured than that provided in the original contract. "If the insured desires to comply with conditions for reinstatement, as laid down in the original policy, the insurer has no right to change the same, or

impose new ones; at least, unless supported by a consideration.'' [6 Couch, Cyc. of Ins. Law, p. 4939.]

However, it appears to be the holding in the Brown case that an application containing the provisions appearing in the forms of the application in the case at bar is in harmony with the provision of the policy and the Kansas Statute providing for reinstatement upon the ''production of evidence of insurability satisfactory to the company,'' at least, in so far as the questions asked relative to the health, illness or ailment of the insured, the consultation of physicians and the effect of misrepresentation relative thereto. In the case at bar, as in the Brown case, insured was asked in the application for reinstatement if he was in sound health and he answered in the affirmative. It has been held that the word ''insurability'' when used in life insurance policies is no more comprehensive than that of ''good health'' and an insurable interest. [Mo. State Life Ins. Co. v. Hearne (Tex.), 226 S. W. 789.]

''The term 'good health' does not mean absolute perfection; rather it is comparative, and the insured need not be entirely free from infirmity, or from all the ills to which the flesh is heir, since slight troubles, temporary and light illness, and infrequent and light attacks of sickness not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not negative good health. In other words, the term 'good health' means a reasonably good state of health and freedom from any disease or illness that tends seriously or permanently to weaken or impair the constitution, and does not refer to the appearance of good health.'' [6 Couch, Cyc. of Ins. Law, pp. 4952, 4953.]

''Referring specifically to the term 'good health,' when used in a policy of life insurance, it has been declared that it means freedom from any grave, important, or serious disease, or any ailment that seriously affected the general soundness or healthfulness of the human system, also, that sickness which will breach a warranty of good health means a serious ailment which has a tendency to impair health and shorten life, and not merely any temporary or trivial ailment. Similarly, 'sound health,' means that insured enjoys such health and strength as to justify a reasonable belief that he is free from organic derangements or symptoms calculated to cause reasonable apprehension that his life will be shortened and that to ordinary observation and outward appearance his health is reasonably such that he may, with ordinary safety, be insured on ordinary terms. Nor is the phrase 'sound health' to be taken literally; it does not mean perfect health, or imply absolute freedom from bodily infirmity or tendency to disease, but means, generally, the absence of any vice or disease in the constitution of a serious nature, or that has a tendency to shorten life, as extradistinguished from a temporary ailment or indisposition.'' [4 Couch, Cyc. of Ins. Law, p. 2950. See, also, Klein v. Farmers &

Bankers Life Ins. Co., 132 Kan. 748; Day v. National Reserve Life Ins. Co., 144 Kan. 619, 624.]

In answer to question 5 it appears that insured stated that he had no illness since the date of the issuance of the policy. The word "illness" is not as broad a term as "bad health." However, undoubtedly, where insured has suffered from an illness trivial in nature, it would not constitute fraud for him to answer such a question in the negative.

In question 5 (b) insured was asked whether he had consulted any physician or physicians and, if so, to state what physicians and for what illness or ailment. He gave a negative answer to this question. "It is a quite generally accepted rule that questions and answers as to consultations with, treatment or attendance by, a physician, and the nature of the ailment, should be given a reasonable construction with reference to what is intended by the contract, and the effect thereon, or upon the risk, and therefore that, reasonably construed, they do not mean a consultation, treatment, or attendance concerning some trivial or temporary indisposition or feeling which has passed away without affecting the general health, but only such information is required as applies to a consultation, treatment, or attendance concerning some illness or disease of substantial importance, or of a serious nature." [4 Couch, Cyc. of Ins. Law, p. 3018. See, also, Kovac v. The Sons and Daughters of Justice, etc., 112 Kan. 178; Houston v. Metropolitan Life Ins. Co., 97 S. W. (2d) 856; Lewis v. New York Life Ins. Co., 201 Mo. App. 48, 66.]

In the physician's statement contained in the proofs of death, it was stated the insured suffered from gonorrhea from 3/1/36 to October, 1936, on which date he was cured. It has been held that a misrepresentation concerning the treatment of insured by a physician for gonorrhea is a material one. [Cromeenes v. Sovereign Camp of the W. O. W., 205 Mo. App. 419.] But whether it is we think depends upon its nature in the particular case and are unwilling to hold that the physician's statement contained in the proofs of death, that insured suffered from gonorrhea, affords more than *prima facie* evidence that insured was inflicted with a material disease. There is evidence in the case that the primary infection of gonorrhea is not serious and if proper treatment is begun in time and carried through there may not be any serious complications therefrom. The testimony was that there were no complications in insured's case. The jury could have found that there was room for an honest belief by insured that he was cured of the disease in April, 1936. We think that under testimony similar to that given by Dr. Zimmer, it would be a question for the jury as to whether or not there was a misrepresentation avoiding the policy made by insured in reference to the soundness of his health, especially, in view of the fact that he may have been expressing merely an opinion as to his health in view of such circumstances.

[See Brown v. Metropolitan Life Ins. Co., *supra*, l. c. 306; Sharrer v. Ins. Co., 102 Kan. 650; Day v. Insurance Co., *supra*; Jackson v. National Life Ins. Co. (Kan.), 90 Pac. 1097, 1099; New York Life Ins. Co. v. McCurdy, *supra*; 4 Couch, Cyc. of Ins. Law, pp. 3042, 3043, 3044.] It was shown that insured suffered from stricture but the evidence was that this was not a serious ailment.

However, the statement that insured had not consulted a physician was not an expression of opinion (See Brown v. Metropolitan Life Ins. Co., *supra*, l. c. 306, 307; New York Life Ins. Co. v. McCurdy, *supra*), but a statement of fact, and if he consulted a physician for a serious ailment, as distinguished from a trivial one, then, under the facts in this case, he made a material misrepresentation in his application for reinstatement, which would void the insurance, as a matter of law. [Brown v. Metropolitan Life Ins. Co., *supra*; New York Life Ins. Co. v. McCurdy, *supra*.] If, at another trial, testimony similar to that of Dr. Zimmer's is introduced, it will be a question for the jury to decide whether insured was guilty of a material misrepresentation in making his answers in the application for reinstatement relative to his consultation with a physician.

The question is raised in the briefs as to what constitutes a material false representation amounting to fraud, as applied to a situation of this kind. Such representation need not necessarily have been concerning a matter which caused the death but relates to facts necessary to enable the insurance company to form a judgment whether it will accept the risk and at what premium. [4 Couch, Cyc. of Ins. Law, pp. 2607, 2693, 2694, 2695.]

"Every fact untruly asserted or wrongfully suppressed must be regarded as material if the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium. So, it is said that whether or not a misstatement is material to the risk, while it is for the jury to determine, depends not upon what it or the applicant may think about the materiality or the importance of the false information given or true information withheld, but upon what those engaged in the life insurance business, acting reasonably and naturally, in accordance with the practice usual among such companies under such circumstances, would have done had they known the truth. It also is declared that whether a representation is material is determined by the question whether reasonably careful and intelligent men would have regarded the fact stated as substantially increasing the chances of the happening of the event insured against, so as to cause a rejection of the application, or acceptance only on different conditions." [4 Couch, Cyc. of Ins. Law, p. 2695.] And, under the Kansas decisions, it was not for the insured to determine whether or not the representations were material to the risk but, a statement that insured had not consulted a physician, when he had consulted

one for a serious ailment, would be fraud as a matter of law. As was said in the Brown case, l. c. 305: "In making his application for reinstatement, and in furnishing evidence of insurability, Brown concealed facts which we think were material to the risk. If appellee's contention were sound, it would mean that Brown and his personal physician were to be satisfied of his insurability, and not the company. The answers as made were made by Brown with the expressed intention of having the company rely on them and reinstate the policy; they were relied on by the company and the policy was reinstated, and the company was thus defrauded." [See, also, Day v. National Reserve Life Ins. Co., *supra*; Sharrer v. Ins. Co., *supra*.]

We have examined the cases of DeValpine v. New York Life Ins. Co., 105 S. W. (2d) 977; Doran v. John Hancock Mut. Life Ins. Co., 116 S. W. (2d) 172, and like cases by plaintiffs on this point. These are Missouri cases where the misrepresentation statute is construed as to reinstatement contracts differently than in Kansas. The Kansas decision covers the matter fully and there is no need of consulting Missouri decisions on the subject.

Complaint is made that the court erred in overruling defendant's objection to the introduction of the assignment of the cause of action from the beneficiary in the policy to the plaintiffs, on the ground that there was no competent evidence that it had been so assigned. However, we find that defendant, in its answer, in effect, admitted its assignment for it pleaded that the assignment "was made" but was "colorable, without consideration, fraudulent and void" and "for the sole purpose of attempting to confer jurisdiction on the courts of Missouri rather than Kansas," etc.

However, it is contended that the court erred in refusing to allow defendant to cross-examine witnesses as to the consideration for the purported assignment and to prove there was no consideration. There is no merit in these contentions. [Sections 698, 699, R. S. 1929; Guerney v. Moore, 131 Mo. 650; Quinn v. Van Raalte, 276 Mo. 71; City of Springfield ex rel. v. Weaver, 137 Mo. 650, 670, 671; Citizens Trust Co. v. Pemiscot, 272 Mo. 681; Keeley v. Indemnity Co. of America, 222 Mo. App. 439; 15 C. J. S. 952.]

The judgment is reversed and the cause remanded. All concur.