REYNOLD CHAMBERS AND JAMES D. POUNCEY, RESPONDENTS, v. METRO-
POLITAN LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.
—157 S. W. (2d) 593.

Kansas City Court of Appeals. January 5, 1942.

*James D. Pouncey* and *Harry A. Hall* for respondents.

*William C. Michaels* and *Ralph M. Jones* for appellant.

*Harry Cole Bates* and *Michaels, Blackmar, Newkirk, Eager & Swanson* of Counsel.

SHAIN, P. J.—This is an action to recover the proceeds of a $5,000 policy issued by defendant, appellant herein, on the life of Albert L. Mason, deceased, and wherein Gertrude Mason, his wife, was beneficiary.

Both insured and beneficiary were citizens of Kansas at the time of insured's death and the stated beneficiary is still a resident of that State.

The plaintiffs, respondents herein, sued as assignees of interest of beneficiary. Plaintiff Pouncey is a citizen and a resident of the State of Missouri, and plaintiff Chambers is a citizen and a resident of the State of New York.

This suit was instituted in the Circuit Court of Jackson County, Missouri, on August 28, 1937. The petition of plaintiffs is in the usual form and all allegations necessary to recovery are made. The policy was issued July 23, 1924, lapsed for non-payment of dues

January 23, 1936, and reinstated in May, 1936; insured died April 6, 1937.

The defendant denies liability and answers by general denial and special defense plea based on alleged misrepresentation made by insured to the effect that at the time of his application for reinstatement he was in sound health, and that he had not consulted any physician or physicians since the date of the issuance of said policy.

The defendant made specific allegations as follows:

"That the insured died on or about April 6th, 1937, and that Gertrude Mason made claim for the benefits of said policy and furnished to the defendant proofs of the death of the insured, including the affidavits of physicians, who had attended or treated the insured; that defendant thereupon for the first time learned from the affidavit of insured's attending physician that he was not in sound health at the date of his application for reinstatement, and that he had had an illness and had consulted a physician, to-wit: that the insured at the date of said application and for two months prior thereto had been suffering from gonorrhea and had been consulting such physician and receiving treatments for such condition every three or four days for two months prior to said application; ('that the insured was also afflicted with a urethral stricture and was being treated by the physician therefor prior to and at the time of the application,')* that such facts were material to the risk, were unknown to defendant and the reinstatement would not have been granted had defendant been advised thereof; that the concealment of such facts and the misrepresentation of insured with respect thereto were for the purpose of deceiving the defendant, which relied thereon, and the reinstatement of said policy was therefore procured by fraud, was without consideration and null and void, and there was and is no liability by reason of the attempted reinstatement and no liability under said policy, except for the amount of non-participating paid-up term insurance placed in force after the lapse of said policy for non-payment of the premium due January 23rd, 1936, and except for a refund of the premiums paid on said policy in connection with and after the attempted reinstatement; that defendant accordingly denied liability for any sum other than the above, and tendered to Gertrude Mason the amount of $149.57, being the amount of paidup insurance in force $42, plus $107 paid by the insured in cash for premiums on and since the attempted reinstatement, and plus 57 cents interest thereon; that said tender was refused, but defendant is ready, willing and able to pay such sum together with interest thereon to Gertrude Mason, to the Clerk of this Court, or such person or persons as the Court may direct."

*Portions in brackets are amendments by interlineation made pursuant to order of Court April 19, 1940, see page 21, *infra*.

Defendant alleged application of the law of Kansas as applying to the contract and, as to same applying, it stands conceded.

Defendant, in answer, challenges the good faith of assignment to plaintiffs.

Plaintiffs' reply, in addition to general denial, to allegations of defendant's answer, sets up the provision of the insurance policy as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material or render the policy void, unless the matters misrepresented shall have actually contributed to the contingency, or the event on which the policy is to become due and pay-. able."

Plaintiffs further reply as follows:

"Plaintiffs deny that the said Albert L. Mason misrepresented the condition of his health in said application for reinstatement, and deny that said Albert L. Mason misrepresented the facts as to his consultation with any physician in his application for reinstatement; and further state that even if such representations were contained in such application for reinstatement, that the same were not material and the matter allegedly misrepresented did not cause or contribute to the death of the said Albert L. Mason and constitutes no defense under the laws and decisions of the State of Kansas and under the aforesaid provisions of the contract and the laws of the State of Kansas and the decisions of that State construing the same."

There was controversy, in addition to above, concerning defendant being restrained from proceeding with prosecution of a declaratory judgment in the United States Court against beneficiary.

On the issues, as above summarized, trial was by jury, resulting in verdict for plaintiffs in the sum of $4097.68. Judgment was entered in accordance and defendant has appealed.

We will continue to refer to parties as appellant as defendant and respondents as plaintiffs, to conform to the situation in the trial court.

This cause, on a former trial wherein judgment was for plaintiffs, was before us for review and judgment was reversed and cause remanded. Our opinion in the first appeal is reported in 138 S. W. (2d) 29 (not yet published in Missouri Reports), and therein is found such a complete statement of issues and adjudication as to all issues presented that we deem it unnecessary for us to herein repeat as to matters therein determined and therefore confine ourselves herein to such issues from the standpoint of the law of the case as declared in our former opinion.

In our statement, *supra,* there is set forth provisions of the policy concerning "misrepresentations made in obtaining or securing a policy of insurance on the lives of any person or persons," and wherein said misrepresentation does not bar recovery unless matters misrepresented shall contribute to the contingency.

Under the law of the State of Kansas, the provisions above do not apply to the matter of reinstatement when the policy has lapsed. The fact that the insured's statements or representations in his application for reinstatement are shown by the evidence to have been untrue presents a material issue to be considered in this review.

The fact that the evidence of the untruth of answers is only supported by proof of death Exhibit "B", proof of death Exhibit "C," the physician's statement, and the testimony of the family doctor, gives rise to controversy and is pertinent to matters before us for review.

Concerning Exhibit "B", the following questions and answers in the testimony of Mr. Barlow, agent of the defendant and witness for defendant, explains as to how same was made, to-wit:

"MR. HALL: I would like to ask a question or two in reference to. this exhibit.

"THE COURT: All right.

"Q. (By MR. HALL) Do I understand this is one of the forms you took over to Mrs. Mason and had her sign it? A. Yes.

"Q. And you had her sign her name at the top? A. Yes.

"Q. Are the policy numbers at the top of the policy in your writing? A. Yes, the policy numbers are in my writing.

"Q. And at the time you had her sign this was the rest of this blank filled out? A. No.

"Q. Nothing was on there except the policy numbers, that is outside of the printed form there was no pencil or pen writing on there at the time she signed it other than the policy numbers? A. No.

"Q. That's right, is it? A. That's right.

"Q. And did she ever see this after it was filled out? A. Not that I know of.

"Q. You kept it, did you? A. I picked them up. You see there were three doctors' statements, and Byron brought one back from the hospital, and I got that and I went back to Dr. Zimmer and got his and went on over and got the other doctor's and attached them to my papers and mailed them the same day to my company.

"Q. After she signed this you took it to the doctor and had it filled out? A. No, I didn't have it filled out. I offered to take it to the doctor if she did not want to go over, and I left it with the doctor and picked it up a couple of days later.

"Q. Well, I say you took it to the doctor to be filled out? A. Yes, I took it and left it with the doctor.

"Q. And you picked it up from the doctor? A. Yes."

In the above exhibit, there is a paragraph as follows:

"The undersigned hereby makes claim to said insurance in the Metropolitan Life Insurance Company and agrees that the written statements and affidavits of all the physicians who attended or treated the insured, and all other papers called for by the instructions thereon,

shall constitute and they are hereby made a part of these proofs of death, and further agrees that the furnishing of this form, or of any other forms supplemental thereto, by said company shall not constitute nor be considered an admission by it that there was any insurance in force on the life in question, nor a waiver of any of its rights or defenses.''

Plaintiffs are shown as objecting to the introduction of Exhibit ''B''. Exhibit ''C'' is the statement of the family physician to whom Exhibit ''B'' was taken. Clause three of the statement is as follows:

''3. Give particulars of each condition for which you treated or advised deceased prior to last illness: Nature of condition: Gonorrhea. Date: 3-1-36. Duration: to October, 1936. *Result: Cured.* Sprained ankle: 12-25-36. Duration: 1 week. Result: cured.'' (Italics ours.)

The evidence is to the effect that the above ailment did not contribute to the death of insured.

Exhibit ''C'' is captioned as follows:

''Proofs of Death''

''Submitted to Metropolitan Life Insurance Company

''Claim Division

''Ordinary Department

''No. 2 Physicians Statement

''(See instructions on back of this sheet)

''The following statement of the Physician is submitted by me as part of said proofs under policy No. 4022759A, 694399A. Albert L. Mason.

''(Signed) (GERTRUDE MASON, Claimant.)''

Plaintiffs objected to the above documentary evidence and to evidence of the family physician on grounds of privileged communications. We refer to objections by plaintiffs by reason of the fact that it is contended that such objections can be urged as sustaining the judgment.

As judgment was for plaintiffs, we include herein questions and answers of the beneficiary in the policy concerning when, how and under what circumstances proofs of loss were procured, to-wit:

''Q. Do you remember the date that your husband died when Mr. Barlow came to your house? A. Yes, I do.

''Q. Had you sent for him or anyone from your family sent for him? A. No, I didn't send for him.

''Q. How soon did he get there after you had received word that your husband had passed away? A. It was in the early afternoon; I don't recall just the hour, but it was early afternoon.

''Q. And your husband died in the late morning? A. Yes.

''Q. Did he have anything there for you to sign? A. Yes, I don't remember how many papers, but he told me—he just said, 'Mrs. Mason, sign these in order that I may send them into the insurance

company.' That is all, and he asked me to sign my name at the top of these blanks.

"Q. Were the papers filled out when you signed them? A. No, they were blank.

"Q. Did he read them to you? A. No.

"Q. Did you read them? A. No.

"Q. Were you sort of overcome? A. Well, I was lying down.

"Q. What was your condition? A. I was just grief-stricken, because I had just had the news of the sudden death of my husband, and I wasn't interested in what was on the papers then."

The theory upon which defendant bases its defense and argues for reversal of judgment is stated under its "Points and Authorities" as follows:

"I

"Defendant's request for a peremptory instruction at the close of the whole case should have been sustained. The misrepresentation being conclusively shown by the documentary evidence, and there being no question as to its materiality under the tests laid down in the former opinion of this court, the matter should have been ruled by the court.

"(a) Even if the applicant had actually recovered from the ailment at the time of the misrepresentation, such fact would not make its materiality a jury question.

"(b) The subject of the representation having been made material by the parties themselves, the contract providing that the determination of his insurability on reinstatement rested solely with the company, and the applicant having agreed that there should be no liability on the reinstatement unless his representation was true, there is no question for the jury as to its materiality.

"II.

"Remarks of plaintiff's counsel in closing argument to the jury were prejudicially erroneous.

"III.

"The court erred in restraining defendant's further prosecution of its declaratory judgment action in the United States District Court against the beneficiary of the policy."

The court opinion of Kansas upon which defendant bases its claim is Brown v. Metropolitan Life Ins. Co., 146 Kansas Reports, 300-307.

The opinion in the Brown case was thoroughly discussed and considered in our opinion, Chambers et al. v. Metropolitan Life Ins. Co., 138 S. W. (2d) 29, and matters of distinguishment in the case at bar from the Brown case were called to attention. As to the issue involved in our former review, the same state of facts concerning reinstatement are herein presented, and we need not again go into details as set out therein.

The Supreme Court of Kansas in the Brown case had under consideration a state of fact wherein it was said of the representations therein involved that, "Neither can it be said that the statements made were not material to the risk," and in that case the proof of alleged fraud was so thoroughly established as to become a matter of law rather than an issue of fact for the jury.

In the Brown case the court explained that the matters of fraud and fact of materiality to the risk were so apparent as to cause the court to refrain from even referring to numerous cases "dealing with good faith, mistake as to good health, etc."

The law of the case at bar, as declared in our former opinion, is to the effect that the questions of good faith and fraud as applied to answers of insured, in application for reinstatement, is a question for the jury. Further, that the question of materiality to the risk is also a question for the jury. However, such question is not to be determined by what the applicant may think as to materiality, "but upon what those engaged in the life insurance business, *acting reasonably* and *naturally* in accordance with the practices usual among such companies under such circumstances." (Italics ours.)

It was further declared in our former opinion, that the law of Kansas controlled in this case and that under the law of Kansas the question of materiality did not depend upon the question as to whether or not misrepresentations were or were not made as to matters contributing to the effect of death.

The record herein shows that the case was tried as based upon the above law and the instructions given to the jury submits the case to the jury on the law as above set forth.

The defendant asked Instruction "C" on its behalf and the same was given. Instruction "C" reads as follows:

"You are instructed that under the law governing this case, it is of no consequence that the disease and ailment with which the applicant was afflicted and for which he had been receiving treatment from a physician, if you so find, did not cause or contribute to his death, nor are you to decide this case upon what you yourselves may think about the materiality or importance of such disease or ailment, nor upon what the applicant or his personal physician thought about his insurability, but upon what those engaged in the life insurance business, acting reasonably and naturally in accordance with the practice usual among such companies under such circumstances would have done had they known the truth.

"Therefore, under the law in this case, your decision is to be determined solely by this test—whether the judgment of the insurance company in accepting the reinstatement of the policy at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium, would naturally be influenced by the fact that the applicant was afflicted with gonorrhea and a urethral stricture, if so,

and if you find and believe from the evidence that the failure to disclose these matters, did cause the company to approve such reinstatement, contrary to the established and customary practice of reasonable men engaged in the life insurance business, acting in good faith, had they known the truth, then your verdict should be for the plaintiffs for the sum of $162.56 only.''

The plaintiffs at the outset made a *prima-facie* case. The defendant joined issue with an affirmative defense which, if found to be true, voided the contract of insurance sued upon. The defendant offered evidence in support of every element of defense specified in its Instruction ''C''.

The insured ·in making application for reinstatement answered questions as follows:

''3. Are you now in sound health? Yes.

''4. Are your habits sober and temperate? Yes.

''5. Have you since date of issue of the above policy (a) Had any illness or injury? If yes, give date and particulars: (a) No.

'' (b) Consulted any physician or physicians? If yes, give date, and name and address of physician or physicians, and state for what illness or ailment. (b) No.''

To show that the aforesaid answers were not true, defendant first offered Exhibits ''B'' and ''C'', referred and commented upon, *supra,* and also the evidence of the insured's family doctor. We conclude that the above oral and documentary evidence, all facts and circumstances in evidence concerning procurement being considered, is insufficient for a basis of declaring as a matter of law, bad faith, fraud and materiality to the risk.

As directly bearing upon materiality of the risk, the deposition of Benjamin D. Brown, manager of the conservation division of the defendant company, was placed in evidence by the defendant.

''Q. Assume an application for the reinstatement of a lapsed Ordinary policy such as this one in question, face amount $5,000, Endowment at Age 85 plan, were submitted to any well-managed life insurance company with whose practice you are familiar and from that application it appeared that the applicant had consulted a physician who had discovered that between ·the policy date and the date of the reinstatement application, the applicant was suffering from or infected with gonorrhea, and state what action that Company would have taken on the application. A. I am sure it would have denied the application and declined to reinstate the policy.''

. . . . . . .

''Mr. Jones (Reading): The question was: 'State what is the usual practice of your Company when such a situation is presented. A. It is our practice to decline such an application for reinstatement.' ''

834

Dr. James E. Bee, Associate Medical Director of the Kansas City Life Insurance Company, was called as a witness on behalf of defendant. On direct examination of Dr. Bee, the following appears:

"Q. Are you familiar more particularly, doctor, with the effect or the influence that the particular disease of gonorrhea has among those engaged in the life insurance business in passing on risks? A. Yes, sir.

"Q. In connection with that disease, are you also familiar with the importance or influence that the condition of a stricture has, in passing on a risk? A. Yes.

"Q. I will ask you then, doctor, if the existence of the disease or infection of gonorrhea would influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk or in fixing the rate of the premium? A. Yes, sir, it would have a very definite influence.

"Q. In what way, doctor? A. Well, we would not accept a risk for insurance for anyone that had an active gonorrheal infection.

"Q. When you say 'we', do you mean those engaged in the life insurance business? A. I mean companies in general, yes, sir."

On cross-examination, the following appears:

"Q. If you had a man that you had known that had gonorrhea and had been completely cured and treated by a competent doctor, would you still turn him down as an insurance risk? A. Not if he had been completely cured with no complications; he would be accepted.

"Q. That is right. Now, these subsequent infections are what might happen if any infection is not treated properly, isn't that right? A. That is correct.

"Q. Now, a fellow gets a scratch on his hand or has an infected foot or a bad cold and if he lets it go, it could possibly result in any complication as serious as any of these you have mentioned? A. Yes, sir.

"Q. So the whole thing is whether or not the man has been treated and what kind of care he has had? A. Yes, sir."

The above, as well as other testimony produced by the defense, is competent testimony which clearly supports the affirmative defense made by the defendant. There is, however, other testimony also offered by the defendant that is not so favorable to the defense. In defendant's Exhibit "C" Physicians Statement it is stated to the malady complained of as follows: "Duration: to October, 1936. Result: Cured."

Dr. Zimmer testified concerning the condition of insured that, "On the 20th of April, 1936, my record shows that Mr. Mason had no discharge and no complaint." The doctor appears to have been somewhat in doubt as to just what he told Mr. Mason at that time concerning being cured. However, the following question and answer

appears: "Do you think it quite likely you told Mr. Mason that at that time?" He said, "Yes, I think so."

There is evidence from which it can be inferred that the insured was fully cured of the malady complained of prior to the time of his death.

Witnesses produced by defendant testified as to the malady complained of as not being serious (see questions and answers in cross examination of Dr. Bee, *supra*).

The following questions and answers are shown in cross-examination of defendant's witness, Dr. Bee, to-wit:

"Q. But what I mean, what we are trying to show to the jury is that gonorrhea or stricture in and of itself is not serious, isn't that right? A. Well, if properly treated.

"Q. That is right. Now, the danger in gonorrhea or stricture is that it may possibly develop into something if it is not properly treated? A. Sure.

"Q. So that after the man has been cured, then the danger has passed and he is acceptable then as an insurance risk? A. That is right."

Dr. D. D. Stofer was called and testified on behalf of defendant. The doctor testified in regard to the practice of insurance companies and on cross-examination the following questions and answers appear:

"Q. What I am trying to arrive at is this, that the insurance companies, in their practice, are not afraid of the gonorrhea, as such, that they are afraid of the secondary infections that might result if the man isn't cured or properly treated; isn't that right? A. That is right.

"Q. That is it? A. Yes, sir.

"Q. So that if the man is cured, then from the insurance standpoint he is acceptable as a risk? A. After the definite postponement period has passed. They figure those things this way, that the complications, if they were going to arise would arise in that period of time, called a postponement period.

"Q. That is right. But now from your company's standpoint, a postponement period is merely a waiting period to see whether or not the man is cured, isn't that right? A. That is right.

"Q. Now, if we assume the man was cured, then from the insurance standpoint he would be acceptable as a risk? A. Yes, sir, after the postponement period."

The doctor placed what he designated as the postponement period applying to an acute gonorrheal infection as being usually three to six months.

Insofar as our research goes, the question of application of the law of Kansas touching misstatement in reinstatement of lapsed policies has not heretofore been before the appellate courts of our State.

The case of Brown v. Insurance Company, 146 Kansas, *supra,* is the outstanding case upon which the defendant relies.

All of the facts and circumstances presented in the Brown case, documentary and otherwise, were clearly to the effect that Brown had been directly informed by physicians who treated him that he had pulmonary tuberculosis even prior to the original issue of his policy. In the Brown case it was not even questioned that his disease was material to the risk. In the Brown case the undisputed testimony, documentary and otherwise, was such as to be conclusive of false statements concerning a matter material to the risk. In the Brown case there was no material issue of fact.

In the case at bar we conclude there is not such documentary evidence as would justify us to declare as a matter of law that the insured had in bad faith fraudulently made misrepresentations concerning a matter material to the risk. As the jury under proper instructions has decided the issue of fact against the defendant, it is not within our province to annul that result by giving consideration to the weight of the evidence.

It was within the province of the trial court to give consideration to the weight of the evidence in passing upon defendant's motion for a new trial and the trial court ruled against defendant on that point when he passed upon the motion.

Concluding as we do, it becomes unnecessary for us to pass upon questions concerning privileged communications. The trial court certainly let down the bars in permitting the testimony of the family physician. However, of such act the appealing defendant cannot complain.

Defendant complains of the trial court's action in restraining prosecution by it of its declaratory judgment in the United States District Court against the beneficiary. As to this complaint we conclude that the trial court had jurisdiction of the parties and the subject-matter of this suit.

In our former opinion, by BLAND, J., the law of this case was clearly defined and declared. Such being the situation, we conclude that any action taken in the United States District Court case is not material to any issue before us for review.

As to the matter of assignment raised, we conclude there is not such showing as would justify a reversal.

Defendant charges error in remarks of plaintiffs' counsel in argument before the jury.

During progress of argument, defendant's counsel interrupted the argument by interposing remarks as to argument, of following purport:

"MR. JONES (Interrupting): If your Honor please, Mr. Hall is telling the jury that the company is not the judge of whether the man is insurable, contrary to your instructions in the case."

On one occasion, objection was made and request for repremand made, whereupon the ruling of the court was as follows:

"The statement is withdrawn and the jury instructed to disregard it."

Objections and exceptions as to response made by court to interruptions, wherein the argumentative interrupting remarks did not even contain an expressed objection, and objections and exceptions are shown to court's ruling, *supra,* when· objection was made.

The trial court in passing upon a motion for new trial gave consideration of assignment of error as to remarks of counsel and ruled against defendant.

We conclude that under the showing of the record, no such prejudicial error in regard to remarks is shown as will justify a reversal.

Judgment is affirmed. All concur.