**John W. ALLEN, Plaintiff-Appellant,**

v.

**SALINA BROADCASTING, INC., et al., Defendant,**

**and**

**Dallas County School District No. 1, Respondent.**

**No. 12256.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 5, 1982.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied Feb. 26, 1982.

Application to Transfer Denied April 13, 1982.

Richard D. Bender, Sherwood, Honecker & Bender, Springfield, for plaintiff-appellant.

Andrew K. Bennett, Freeman, Fredrick, Bennett & Rogers, P. C., Springfield, for respondent.

BILLINGS, Judge.

Defendant School District No. 1, Dallas County, was granted summary judgment on Count II of plaintiff John W. Allen's four-count amended petition in which he sought damages against five defendants for alleged defamatory statements.

▮ Initially, we are confronted with the School District's motion to dismiss this appeal as premature because the summary judgment did not dispose of all parties and all issues. We find no merit in this contention. The trial court's docket sheet clearly shows the order granting summary judgment for the School District was made final for purpose of appeal. An order granting summary judgment may properly be designated by the trial court as final for purposes of appeal pursuant to Rule 81.06, V.A.M.R.; *Kaufman v. Bormaster*, 599 S.W.2d 35 (Mo.App.1980). Dismissal of a claim against one party in a multiple-party suit may also be designated final for purposes of appeal under Rule 81.06. *Spires v. Edgar*, 513 S.W.2d 372 (Mo. banc 1974). School District's motion to dismiss the appeal is denied.

Plaintiff's suit charges four counts of defamation based upon separate publication in 1975, by three of the defendants, including the School District, of a report written by a fourth defendant claiming the plaintiff was "starving his cattle to death." The fifth defendant, Wayne Lemmons, is an employee of the School District. In an original proceeding in prohibition, our Supreme Court ruled that plaintiff be allowed to amend his petition to aver sufficient facts to prosecute his claim against the School District within the proprietary function exception to the doctrine of sovereign immunity. *State ex rel. Allen v. Barker*, 581 S.W.2d 818 (Mo. banc 1979).

The single issue presented in this appeal is whether or not the School District is shielded by sovereign immunity. Resolution of this question turns on whether or not plaintiff has alleged sufficient facts to bring this suit within the exception to the general doctrine of immunity. More narrowly, do the facts alleged show the School District's operation of a radio station to be a proprietary function, rather than a governmental function?

"A school district is a 'public corporation' forming an integral part of the State and constituting that instrumentality of the State utilized by the State in discharging its constitutionally invoked governmental function of imparting knowledge to the States youth." (citations omitted). *Kansas City v. School District of Kansas City*, 356 Mo. 364, 201 S.W.2d 930, 933 (1947). Because a school district is an arm of the state, the Missouri Supreme Court, in *Rennie v. Belleview School District*, 521 S.W.2d 423 (Mo. banc 1975) refused to "enter the maze of the 'governmental-proprietary' dichotomy" in this area. The Court reaf-

firmed this position in *Beiser v. Parkway School District*, 589 S.W.2d 277 (Mo. banc 1979).

The prevailing view was that the school district existed "'. . . for one single and noble purpose, viz., to educate the children of the district.'" *Kansas City v. School District of Kansas City, supra,* at 933. However, as *State ex rel. Allen v. Barker,* supra, rules, those functions of a school district that do not serve this "noble purpose" are proprietary functions and are not given immunity.

"Charitably it has been said that the line between the functions is not clearly defined. The underlying test is whether the particular act performed is for the common good of all or whether the act can be performed adequately only by government and is governmental in character." *Id.* at 824. This distinction between governmental and proprietary functions is most often applied to municipalities [See *Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977)] and much of the case law has developed in this area.

The Missouri Supreme Court, quoting from a New Jersey Supreme Court decision, related the following concerning this distinction.

"The distinction is illusory; whatever local government is authorized to do constitutes a function of government, and when a municipality acts pursuant to granted authority it acts as government and not as a private entrepreneur. The distinction has proved useful to restrain the ancient concept of municipal tort immunity, not because of any logic in the distinction, but rather because sound policy dictated that governmental immunity should not envelop the many activities which government today pursues to meet the needs of the citizens." *State ex rel. Askew v. Kopp,* 330 S.W.2d 882, 890 (Mo. 1960).

Discussing this determination, McQuillin on municipal corporations offers the following:

"The true test does not rest upon the determination as to whether or not the municipality is reaping a monetary gain, nor whether such activity has been held to be of such a public necessity that expenditure of funds in connection therewith was for a public purpose.

It has been said that the liability or nonliability of a municipality for its torts does not depend upon the nature of the tort, the relation existing between the city and the person injured, or whether the city was engaged in the management of tangible property, but depends upon the capacity, in which the city was acting at the time. It is not the character or name of the agent who executes the duty of removing the cause of discomfort and ill health to the public which fixes the character of the duty performed, but it is the act itself which determines whether it is governmental or ministerial.

What are governmental powers and duties, and what are corporate duties, is not subject to precise definition further than to say this: The powers and duties of municipal corporations are of two-fold character; the one public as regards the state at large, insofar as they are its agents in government; the other private insofar as they provide the local necessities and conveniences for their own citizens. A municipal corporation 'possesses two kinds of powers; one governmental and public, and to the extent they are held and exercised, is clothed with sovereignty; the other private, and to the extent they are held and exercised, is a legal individual. The former are given and used for public purposes; the latter for private purposes. While in the exercise of the former the corporation is a municipal government, and while in the exercise of the latter is a corporate legal individual.' It has been said that the character of a municipal function as public or private depends upon whether it was undertaken primarily for the benefit of the community as individuals or primarily for the benefit of the municipality as a corporate entity.

\* \* \* \* \* \*

In determining whether activities of a municipality are governmental or pro-

prietary, it is proper to consider whether the activity is primarily for the advantage of the state as a whole or for the special local benefit of the community involved, and to further consider whether the activity is in performance of a duty imposed upon the municipality by the sovereign power, or is in the exercise of a permissive privilege granted by the sovereign power; but such tests are not conclusive in determining the capacity in which the city's activities are conducted." (Footnotes omitted) 18 McQuillin, Mun. Corp. § 53.29 (3d Ed. 1977).

In *Jones v. State Highway Commission,* supra, at 229, our Supreme Court states: "Through use of the 'governmental-proprietary dichotomy', liability or non-liability of a municipality for its torts has come to depend upon the character of the act performed, not the nature of the tort. A 'maze of inconsistency' has developed in suits against cities, producing 'uneven and unequal results which defy understanding.'" Matters are further complicated by the fact that even though a particular activity is classified as proprietary, certain phases of that activity may be governmental; the converse is, of course, also true.[1]

While it appears from the affidavits in support of the motion that the purpose of the School District and the major function of its radio station may be educational, the counter-affidavit, which supports some of the allegations of plaintiff's amended petition, indicates there are some phases of its operation that are not. According to the counter-affidavit the station operates during times when there are no students in school or involved in the station; it has a full-time staff, none of which are students, and, the Corporation for Public Broadcasting exercises a certain amount of control over the manner and method of the station's operation. Plaintiff's amended petition avers the alleged defamatory story was broadcast by a paid staff member, based upon his own research or investigation, without student participation, and that this same staff member made the decision to air the alleged defamatory story.

■ The particular use of the radio station at the time of the tort is determinative. *Burke v. City of St. Louis,* 349 S.W.2d 930 (Mo.1961); see *Weiser v. Kansas City,* 481 S.W.2d 568 (Mo.App.1972). At the time of the alleged defamatory broadcast plaintiff claims there was "substantially" no student involvement. Plaintiff further claims: "That the particular news program complained of was handled and broadcast by paid staff personnel with students seldom, if ever, called upon to participate in any meaningful sense."

Review of a summary judgment is done in two steps: one, whether there is a genuine issue of material fact, and two, whether the prevailing party was entitled to judgment as a matter of law. *Kaufman v. Bormaster,* supra; Rule 74.04(c) V.A.M.R. A genuine issue of fact exists when there is the slightest doubt as to a material fact; a fact is material if it is of such "legal probative force as would control or determine the result of the litigation." *State ex rel. McDonnell Douglas Corp. v. Gaertner,* 601 S.W.2d 295, 298 (Mo.App.1980).

■ Because there is doubt as to the use of the radio station during the alleged defamatory broadcast, we conclude there are material issues of fact to be determined and the lower court erred in granting the School District's motion for summary judgment. Accordingly, the judgment of the trial court

1. In *Lober v. Kansas City,* 74 S.W.2d 815, 822 (Mo.1934), the court notes the dual functions of a city water system; "supplying its inhabitants with water for revenue, a proprietary purpose, and also for the prevention of fires and for keeping the city sanitary and healthful, a governmental purpose...."

The court in *Wasserman v. Kansas City,* 471 S.W.2d 199 (Mo. banc 1971) points out that while the operation and maintenance of a park is a proprietary function, maintaining order (e.g., crowd control) within the park is a governmental function.

In *Wieser v. Kansas City,* 481 S.W.2d 568 (Mo.App.1972), the court held that even though the operation of a city hall is a governmental function, that part of the building which is used by the water department is a proprietary function.

is reversed and the cause remanded for further proceedings.

PREWITT, P. J., MAUS, C. J., and HOGAN, J., concur.