STATE of Missouri, ex rel. Karen WARTICK and Paul Duane Wartick, Relators,

v.

Honorable Charles E. TEEL, Respondent.

No. 15142.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 22, 1987.

Greg B. Carter, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for relators.

Chuck D. Brown, Joplin, for respondent.

MAUS, Judge.

The relators Karen Wartick and Paul Duane Wartick are defendants in a personal injury action pending in the Circuit Court of Jasper County. By this original proceeding in mandamus the relators seek an order directing reinstatement of their third-party petition for indemnification or contribution against the City of Joplin. This court issued its preliminary order.

The following facts are established by the record. The plaintiffs in the underlying personal injury action are Adrienne Hall, four years of age, and Burt Doug Hall and Louise Hall, her parents. By the third amended petition, Adrienne Hall alleges she was seriously injured on June 29, 1984, when a stone pillar fell upon her. By Count I she seeks recovery upon allegations that the stone pillar was upon relators' property; that it was in a deteriorated condition and constituted an "attractive nuisance." By Count II, her parents assert a derivative claim upon the same basis. By Counts III and IV those parties assert similar claims upon the basis of the relators maintaining a dangerous condition adjacent to a public way.

In a third-party petition against the City of Joplin the relators alleged the stone pillar was located upon a public alley of the city. They further alleged "the City, in complete derogation of its primary and non-delegable duty to keep the alley in a safe condition for travel and to keep it free from nuisances and defects, failed, omitted and neglected to maintain, repair, remove, barricade or safeguard said pillar." As stated, in the event of an adverse judgment against them, the relators sought indemni-

fication or contribution by the city. The city filed a motion to dismiss the third-party petition. The trial court found the city was not insured against the liability asserted against it. On that basis it sustained the city's motion to dismiss the third-party petition. The relators' motion to reinstate the third-party petition was denied.

The relators contend that by virtue of Rule 52.11 they are entitled to seek indemnification or contribution by their third-party petition against the city. The respondent contends such relief is barred by the doctrine of sovereign immunity. The respondent cites the fact the city's motion to dismiss established that it had no liability insurance applicable to that claim. The respondent emphasizes the fact the injury occurred before the 1985 amendments to § 537.600. The respondent's basic argument in the brief is as follows:

This statute was construed by the Missouri Supreme Court in *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864 (Mo. banc 1983), to restrict the waiver of sovereign immunity to only those conditions mentioned in subparagraphs (1) and (2) of Section 537.600 and then only to the extent that the public entity had acquired insurance, or was self-insured, to indemnify it for damages alleged to have been caused.

On that basis, the respondent concludes that, as the city had no applicable liability insurance, the relators' claim asserted in their third-party petition was barred.

The recent history of the doctrine of sovereign immunity in Missouri is well known.

In 1977, the Missouri Supreme Court decided that because of the governmental/proprietary distinction, '[a] "maze of inconsistency" has developed in suits against cities, producing "uneven and unequal results which defy understanding." ' The Supreme Court then prospectively abolished sovereign immunity, and gave the legislature an opportunity to reinstate it. *Jones v. State Highway Commission,* 557 S.W.2d 225, 229 (Mo. banc 1977).

2 Mo. Local Government Law § 9.4 (Mo.Bar 2d ed. 1986). The legislature re-

sponded by the enactment of §§ 537.600 to 537.650. *Bartley,* relied upon by the respondent, held the following:

By enacting §§ 537.600—.650 the Missouri legislature intended to reestablish the doctrine as it existed prior to *Jones* [*v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977)] with any exceptions to its status being provided in those sections enacted. ... In following these basic guidelines, we find that the only exceptions to the doctrine as it existed prior to *Jones* are those contained in § 537.600(1) and (2)—operation of motor vehicles and condition of property—as modified by § 537.610, when insurance has been acquired.

*Bartley v. Special School District of St. Louis County,* supra, at 870. The effects of the 1985 amendments to § 537.600 have included the following. "The express waivers of immunity for operation of motor vehicles and for dangerous conditions of property are absolute waivers whether or not the entity was functioning in a governmental or proprietary capacity and whether or not the entity is covered by liability insurance." 2 Mo. Bar Government Law § 9.6.

Whether or not those amendments are in whole or in part retroactive, see *Cates v. Webster,* 727 S.W.2d 901 (Mo.1987) and *State ex rel. Missouri Highway and Transportation Commission v. Appelquist,* 698 S.W.2d 883 (Mo.App.1985), is not decisive. The purpose of the two exceptions contained in § 537.600 is to waive immunity in the instances therein specified when, before *Jones,* such immunity would have been recognized. For example, the operation of a motor vehicle by a state employee, or the dangerous condition of state property. Cf. *State ex rel. New Liberty v. Pratt,* 687 S.W.2d 184 (Mo. banc 1985); *Page v. Metropolitan St. Louis Sewer District,* 377 S.W.2d 348 (Mo.1964); *McConnell v. St. Louis County,* 655 S.W.2d 654 (Mo.App.1983). By waiving immunity in the instances therein specified, the two exceptions contained in § 537.600 do not create sovereign immunity where it did not exist before *Jones.*

*Bartley* is not authority to the contrary because it dealt with a governmental act of a school district. "Prior to 1977, the state and other governmental agencies, such as school districts, townships and sewer districts, were generally immune from claims." 2 Mo. Local Government Law § 9.4. Also see *Beiser v. Parkway School Dist.*, 589 S.W.2d 277 (Mo. banc 1979). The doctrine of sovereign immunity extended to governmental functions of municipalities but not to proprietary functions. "With two express exceptions, § 537.600 reinstates sovereign immunity as it existed before *Jones. By implication, § 537.600 reinstated the governmental-proprietary test as well, and this is the law in Missouri today. State ex rel. Allen v. Barker,* 581 S.W.2d 818, 825 (Mo. banc 1979)." *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 295 (Mo.App.1983) (emphasis added). Also see *State ex rel. New Liberty v. Pratt,* supra.

However, despite the difficulties with the governmental-proprietary distinction, the General Assembly by enactment of § 537.600 ... reinstated '[s]uch sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, ...' the date of the opinion in Jones, supra. *Hence the distinction is still viable and must be applied.*

*State ex rel. Allen v. Barker,* supra (emphasis added). Also see *Gabbett v. Pike County Memorial Hospital,* 675 S.W.2d 950 (Mo.App.1984). It is not necessary to consider the application of the governmental and proprietary distinction as applicable to a school district. See *Allen v. Salina Broadcasting, Inc.,* 630 S.W.2d 225 (Mo. App.1982); 2 Mo. Local Government § 9.6. It is clear the distinction between governmental and proprietary functions is applicable to the doctrine of sovereign immunity in respect to municipalities. Before *Jones,* the duty of the city with respect to its streets and alleys was a proprietary function. *Myers v. City of Palmyra,* 355 S.W.2d 17 (Mo.1962), 92 A.L.R.2d 791 (1963). It yet is. *Davis v. City of St. Louis,* 612 S.W.2d 812 (Mo.App.1981). Cf. *Larabee v. City of Kansas City,* 697

S.W.2d 177 (Mo.App.1985); *Allen v. Salina Broadcasting, Inc.,* supra. On June 29, 1984, the doctrine of sovereign immunity did not extend to a breach of that duty.

Under Rule 52.11(a) after the passage of 10 days following the filing of a defendant's answer, leave of court must be obtained by motion with notice to all parties for the filing of a third party petition. This requirement indicates that the filing of a third party petition after the 10 day period is not a matter of right. Rather, appeal must be made to the discretion of the trial court.

*State ex rel. Peavey Co. v. Corcoran,* 714 S.W.2d 943, 945 (Mo.App.1986). The relators did not file their third-party petition within ten days after they filed their original answer. They suggest they filed it upon discovery of the location of the pillar. The respondent does not deny that suggestion. Whether or not the belated discovery of the location of the pillar caused the filing of the third-party petition to be a matter of right need not be considered. The respondent does not contend the third-party petition was dismissed on a discretionary basis.

The purpose of third party practice is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence to obtain consistent results from identical or similar evidence and to accomplish ultimate justice for all concerned with economy of litigation and without prejudice to the rights of another.

*State ex rel. Laclede Gas Company v. Godfrey,* 468 S.W.2d 693, 698 (Mo.App. 1971). "The teaching of *Godfrey* is that an appellate court will intervene by extraordinary writ where the action of the trial court results in a subversion of the desirable purpose of a procedural rule for no discernible reason." *State ex rel. Peavey Co. v. Corcoran,* supra, at 945. That principle is applicable where the desired purpose of the rule is thwarted for a nonexistent reason. See *State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d 764 (Mo. banc 1984); *State ex rel. Green v.*

*Kimberlin,* 517 S.W.2d 124 (Mo. banc 1974).

As stated, the relators deny the pillar was located on their property. By their third-party petition, they allege it was located upon the alley. A strict construction of Rule 52.11(a), and literal adherence to those pleadings, would bar the third-party petition.

Rule 52.11(a) is substantially the same as Rule 14 of the Federal Rules of Civil Procedure. It is well established "[s]ince the purpose of Rule 14 is to reduce multiplicity of litigation, ... it has been given a liberal construction by the courts." *O'Mara Enterprises, Inc. v. Mellon Bank, N.A.,* 101 F.R.D. 668, 670 (W.D.Pa.1983) (citation omitted). Further, "[u]nder Rule 14(a), the allegations of the third-party complaint need not show that the recovery is a certainty and the complaint should be allowed to stand if, under some construction of the facts, which might be adduced at trial, recovery would be possible." *Stiber v. United States,* 60 F.R.D. 668, 669 (E.D.Pa.1973). In *Marcus v. Marcoux,* 41 F.R.D. 332 (D.C. R.I.1967), a defendant alleged a third-party defendant was the sole cause of a motorcycle collision. That allegation was found to be for the purpose of avoiding an admission of liability. "[F]or the purpose of impleading the third-party defendant, it is mere surplusage." Id. at 335. The court further observed, "In the case at bar, it is apparent that the third-party complaint attempts to place sole liability for the collision upon the third-party defendant with an alternative allegation reading, '... or in the alternative, in part the cause of said collision and the alleged injuries. ...'" Id. at 334. It held the third-party petition was proper.

In this case, it is possible the evidence could establish the pillar was located partially upon the property of the relators and partially upon the alley, or otherwise create joint liability. The prayer of the third-party petition is for a judgment of indemnification or "alternatively, defendants pray that the Court issue a judgment against [sic] them, subsequent to an apportionment of fault, for contribution against the third party defendant the City of Joplin." It is proper for the relators to attempt to establish contribution by the third-party petition. Id.

The preliminary order of this court is made absolute. The trial court is directed to set aside its order of March 13, 1987, dismissing the relators' third-party petition and to reinstate the same.

PREWITT, P.J., and HOGAN, J., concur.

FLANIGAN, J., dissents and files dissenting opinion.

FLANIGAN, Judge, dissenting.

I respectfully dissent.

The majority opinion directs the trial court to reinstate the third party petition. Although I agree with the majority opinion that the trial court dismissed the third party petition for a wrong reason—the fact that the city had no liability insurance—there is an independent reason why the dismissal was proper. This court is concerned with the propriety of the dismissal, not with the trial court's rationale for entering it. The facts here do not permit defendants to bring in the city as a third party defendant.

Rule 52.11,[1] dealing with third-party practice, reads, in pertinent part:

"At any time after commencement of the action a *defending party, as a third-party plaintiff,* may cause a summons and petition to be served upon a person not a party to the action who is or may be liable to *him* for all or part of the plaintiff's claim against him." (Emphasis added.)

The city is not "a person not a party to the action' who is or may be liable to [defendants-third party plaintiffs] for all or part of the [plaintiffs'] claim against [defendants-third party plaintiffs]."

V.A.M.R.

1. Except where otherwise indicated, all references to rules are to Missouri Rules of Court,

The issue of whether the defendants' third party claim comes within the provisions of Rule 52.11 is an issue "of jurisdiction, rather than abuse of discretion." *State ex rel. Green v. Kimberlin,* 517 S.W.2d 124, 127 (Mo. banc 1974). It is required "that the claim asserted, if proved, would transfer the liability asserted against the defendant/third-party plaintiff to the third-party defendant. '[T]here must be an attempt to pass on to the third party all or part of the liability asserted against the defendant.'" Id.

The court also said, at p. 127:

"What is determinative is whether the *facts* set forth in the *third-party petition* constitute a basis for a theory by which the third-party defendant would be liable to the third-party plaintiff if such third-party plaintiff is found to be liable to the original plaintiff. If the liability of the third-party defendant is not dependent on the liability of the third-party plaintiff, the claim would not come within the provision of Rule 52.11." (Emphasis added.) The court said:

"Rule 52.11 is a copy of Rule 14 of the Federal Rules of Civil Procedure. Our courts, as well as courts of other states which have adopted the federal rule as prototype, in construing the local impleader rule or statute have drawn frequently from federal decisions and commentaries." Id. fn. 1.

In *State ex rel. Baldwin v. Gaertner,* 613 S.W.2d 638 (Mo. banc 1981), the court said, at p. 640:

"The basis of a third-party action is a *common liability* to the plaintiff, in whole or in part. *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466, 468–69 (Mo. banc 1978). 'Where there is *no common liability,* as here, no contribution can be obtained.' *Martinez v. Lankster,* 595 S.W.2d 316, 318 (Mo.App.1980). The same would be true of partial indemnity. The test of the propriety of third-party impleader is 'whether the third party is liable as a *guarantor, surety, insurer or indemnifier* of the principal defendant.'" (Emphasis added.)

Federal Rule 14 was promulgated in 1938. "In its original form the rule permitted a third party to be impleaded who is or may be liable to him [the original defendant] or to the plaintiff for all or part of the plaintiff's claim against defendant. Thus defendant could implead any third party who might be liable on plaintiff's claim.... [T]he rule was amended in 1948 to eliminate defendant's right to implead persons directly liable to plaintiff." Wright & Miller, Fed.Prac. & Proc., Vol. 6, § 1446, pp. 200–201. Thus Rule 14, in its present form, now permits defendant to implead only a person "who is or may be liable to him for all or any part of the plaintiff's claim against him." Rule 52.11 contains the same language.

Federal courts hold, with refreshing unanimity, that Federal Rule 14(a) does not permit a defendant to implead a third party claimed to be *solely* liable to the plaintiff. *Millard v. Municipal Sewer Auth. of Tp. of Low. Makefield,* 442 F.2d 539, 541[3] (3d Cir.1971); *Pennine Resources, Inc. v. Dorwart Andrew & Co.,* 639 F.Supp. 1071, 1076 (E.D.Pa.1986); *Hartford Acc. & Indemn. Co. v. Parente, Randolph,* 642 F.Supp. 38, 41 (M.D.Pa.1985); *Bike v. American Motors Corp.,* 101 F.R.D. 77, 78 (E.D.Pa.1984); *Barab v. Menford,* 98 F.R.D. 455, 456 (E.D.Pa.1983); Wright & Miller, Fed.Prac. & Proc., Vol. 6, § 1446, p. 258. See 168 A.L.R. 600 (Right of defendant to bring in third person asserted to be solely liable to plaintiff).

"The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough."

Wright & Miller, Fed.Prac. & Proc., Vol. 6, § 1446, p. 257.

Under Federal Rule 14(a) "a judgment against the third party defendant must inure to the benefit of the third party plaintiff, and not the original plaintiff." Wright & Miller, Fed.Prac. & Proc., Vol. 6, § 1446, p. 258.

A third party petition, like a petition, must contain: "(1) a short and plain statement of the facts showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." Rule 55.05. It is, therefore, necessary to examine the third party petition to see if it alleges *facts* showing that the defendants, the Warticks, are entitled to relief against the city. This, in turn, requires determining, under the Missouri cases cited previously, whether the third party petition alleges facts showing a "common liability to the plaintiff, in whole or in part." Similarly the inquiry is whether the third party petition alleges facts showing that the city is liable to the Warticks as their guarantor, surety, insurer or indemnifier.

The petition, actually the third amended petition, of the plaintiffs against defendants Wartick alleges that on June 29, 1984, plaintiff Adrienne Hall, age 4, was injured when one of two pillars, or perhaps both of them, fell upon her. The prolix petition is in four counts. Count I asserts the claim of the minor plaintiff Adrienne Hall. Counts II and IV assert the derivative claims of her parents, co-plaintiffs. Count III is asserted by "the plaintiffs" but perhaps the drafter intended Count III to be asserted only on behalf of Adrienne, since it contains no allegations of damages sustained by her parents.

In one paragraph Count I alleges that "the pillars" fell upon Adrienne. In another paragraph Count I mentions "the pillar that fell on" Adrienne. Throughout the petition, however, it is alleged that the pillar or pillars were located on the property of defendants Wartick at 217 N. Connor in Joplin and that the defendants "had possession and control of said pillars" and that the pillars "were in a deteriorated and unstable condition."

Count III, after incorporating some of the allegations of Count I, including the allegation that the pillars were located on the land of the Warticks, alleges "that the aforesaid pillar was so close to a public alley that children because of their tendency to deviate from the alley in the exercise of ordinary care were exposed to a danger because of the unstable condition of the pillar and that defendant (sic) knew or should have known of such danger and that defendant (sic) failed to use ordinary care to barricade the danger or remove it and that as a direct result of such failure plaintiff Adrienne Hall was injured."

The third party petition of the Warticks against the city incorporated the contents of the petition and defendants' answer. Defendants' answer *denied* that the "pillar" was located on defendants' land. The third party petition then alleged: At all times relevant hereto, third party defendant, the City of Joplin, was the owner of an alley; *"[t]here was located upon said alley a stone pillar"*; the city had knowledge of the existence of the pillar and its location *on the alley;* the city had a primary nondelegable duty to keep *the alley* in safe condition for travel and also a duty to keep *said alley* free from nuisances and defects for pedestrians; the city "failed, omitted, and neglected to maintain, repair, remove, barricade or safeguard said pillar; as a direct and proximate result of the aforesaid failure, neglect and omissions on behalf of the city, the plaintiff Adrienne Hall sustained personal injury; . . . as a further direct and proximate consequence of the aforesaid failure, neglect, and omissions of the city, these defendants, *through no fault of their own,* may be held responsible for the damages of the plaintiffs. That as a consequence, these defendants are entitled to indemnification from the City of Joplin, pursuant to the procedural substantive law of the State of Missouri; Alternatively, and *in the event the trier of fact determines* that the aforesaid failures, neglect, and omissions of the City combined with the alleged actions of these defendants to cause or to contribute to cause the damages claimed by plaintiffs, then these defendants are entitled to a judgment for contribution against the third party defendant the City of Joplin, all as contemplated by the doctrine of comparative fault and the doctrine of apportionment of fault." (Emphasis added.)

**264**

The prayer of the third party petition requested, in the alternative, indemnity or contribution from the city.

The foregoing pleadings demonstrate that the plaintiffs' petition is based upon a defective condition of the pillar or pillars located on the land of the defendants. If the pillars are not located on the land of the defendants, they have a complete defense to the petition.

The third party petition, on the other hand, alleges that the pillar is located on an alley owned by the city. The third party petition contains no allegation that the *defendants* have any ownership interest in the alley or in the pillars or are otherwise responsible for the condition of the pillars. The third party petition alleges no facts showing a common liability of the Warticks and the city to the plaintiffs. The third party petition alleges no facts showing that the city is liable as a guarantor, surety, or insurer of the Warticks.

The third party petition contains no allegations which would support a finding that the city must indemnify defendants for any liability they incur to the plaintiffs. Similarly there is no allegation in the third party petition which would support a finding of contribution between the defendants and the city in sharing joint responsibility to the plaintiffs.

The third party petition is merely an attempt to implead a third party which the defendants claim to be solely liable to the plaintiffs. In *Stephenson v. McClure,* 606 S.W.2d 208, 213[5] (Mo.App.1980), this court said:

> " 'It should be borne in mind that the right to *non-contractual indemnity* presupposes actionable negligence of *both* parties toward a third party.' *Whitehead* and *Kales,* supra, 566 S.W.2d at 468. It is a well-recognized rule that one seeking contribution as a joint tortfeasor must allege that *he* was a joint tortfeasor." (Emphasis added.)

Accordingly, the trial court properly dismissed the third party petition, and this court should vacate its preliminary order in mandamus.