**Lorraine BARRERA, Respondent,**

v.

**INDIVIDUAL ASSURANCE COMPANY, Appellant–Respondent,**

and

**Clayco State Bank, Appellant.**

Nos. WD 44487, WD 44495.

Missouri Court of Appeals, Western District.

Feb. 11, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1992.

Application to Transfer Denied June 2, 1992.

Steven D. Wolcott, Withers, Brant, Howard & Mullennix, Liberty, for appellant.

Dennis L. Davis, Terrence Ahern, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, for appellant-respondent.

J.C. Hambrick, Jr., Catherine A. Reinmiller, Schulz, Bender, Maher & Blair, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and SPINDEN, JJ.

TURNAGE, Judge.

Lorraine Barrera filed suit against Individual Assurance Company, (IAC), to recover on a policy of credit life insurance issued by IAC on her husband, Manuel Barrera, Jr. IAC filed a cross-claim against Clayco State Bank, the agent of IAC, for violation of Clayco's agent contract with IAC. The suit by Lorraine against IAC was tried to a jury and resulted in a verdict in favor of Lorraine for the amount of the policy. The cross-claim of IAC against Clayco was tried by the court after the jury verdict, and the court found the issues in favor of IAC and entered judgment for it against Clayco in the amount of the jury verdict. IAC has appealed from the judgment entered on the jury verdict against it in favor of Lorraine on the ground that Manuel signed an application containing representations concerning his health which were false and claims error in the action of the court in striking its pleaded fraud defense. Clayco has appealed from the judgment entered against it in favor of IAC on the ground that there is no substantial evidence to support the judgment. Both judgments are affirmed.

Manuel Barrera was the owner and operator of a restaurant in Claycomo known as El Sombrero. His wife, Lorraine, was active with him in the operation of the business because Manuel had a full-time job

with a railroad. Prior to April 2, 1987, Manuel had decided to build an addition to his restaurant and to make other improvements. This required him to obtain a construction loan from Clayco. When the construction was complete, Manuel spoke with Robert Lutz, the president of Clayco, about Clayco making a permanent loan to finance the improvements. Lutz agreed to make the permanent loan.

As a part of the closing of the permanent loan Lorraine told Lutz that she wanted credit life insurance on Manuel. At this point the evidence conflicts.

Lorraine testified that she and Manuel went to the bank on April 2, 1987, and met with Robert Lutz in his office. Lorraine testified that she and Manuel sat at Robert Lutz's desk and that Robert was the only one present except when Rick Lutz was called in to sign some documents as a witness. She said the entire conversation about the insurance application was with Robert. Lorraine testified that Robert asked her if Manuel had been seeing a doctor. She told Robert that Manuel had been seeing a doctor every three or four months for his diabetes and stroke. Robert handed a document to Manuel and told him to sign at the "X." Manuel signed the document, which was the application for life insurance, and gave it back to Robert. Lorraine testified that neither she or Manuel made any other entries or marks on the application. The application asked two questions; "[h]ave you ever had heart trouble, cancer, emphysema, nervous disorder, kidney disorder, or diabetes?" and "[h]ave you consulted a physician in the past 3 years? (Except for routine physicals)." The questions were followed by two boxes which were under the headings "Yes" and "No." Lorraine testified that neither she or Manuel read the application and did not know that the "No" box after each question was checked.

IAC's version of the signing of the application was as follows. Robert testified that he was not present when the application was signed and had no knowledge of the circumstances surrounding the signing of the application. Rick Lutz worked in the bank and testified that he was the one that handled the closing of the loan and the application for insurance. Rick testified that he handed the application to the Barreras and told them to read the health questions and check the appropriate boxes about Manuel's health. He stated that Manuel gave no verbal response and he laid the application in front of Manuel. He stated that Lorraine picked up the application and read it. She handed the application to Manuel who checked the "No" box for the two health questions and signed the application. Manuel handed the application to Rick, who tore off the borrower's copy and placed it in a stack of other papers to be given to the Barreras. Rick admitted that at the time he took the application from Manuel, he knew that Manuel had a medical problem because Manuel walked slowly and his speech was somewhat slurred.

Robert Lutz testified that he was aware that Manuel had a very serious illness and that he had noticed a change in Manuel's appearance including his shuffled walk and slurred speech.

Larry Barrera, Manuel's son, testified that he had several conversations with Rick Lutz as to his father's condition after his stroke, including one in which he told Rick that Manuel had suffered a stroke.

There was evidence that Robert Lutz and Manuel were close friends and that Robert frequently went to the restaurant in the morning for coffee and visited with Manuel. Lorraine testified that Manuel had suffered a stroke in 1984, and that from that time until his death in September, 1988, he displayed physical effects of the stroke. Several members of the Lion's Club, of which Manuel and Robert were members and which met at El Sombrero, testified that any person observing Manuel could tell that he had serious medical problems. Lorraine testified that as a result of the stroke Manuel had Bell's Palsy on the right side of his face, that he would drool from his mouth and had difficulty in swallowing, eating and speaking, and had a shuffled walk. She further testified that because of his difficulty in eating, he carried a small

towel with him and did not eat with other members of the Lion's Club, but ate at a small table by himself.

## IAC APPEAL

IAC has appealed the judgment entered on the jury's verdict in the amount of $111,654.20 in favor of Lorraine. IAC contends that it was entitled to treat the insurance policy as void because Manuel's application contained material representations that were false, Manuel warranted the truthfulness of the representations, and Manuel and Lorraine as the beneficiaries are bound by the application and estopped to deny knowledge of its contents. IAC relies upon the rule that a material misrepresentation in an application for insurance which was signed by the applicant and in reliance upon which the policy is issued will render the policy voidable whether the misrepresentation is made intentionally or through a mistake and in good faith. It also relies on the rule that a person is bound in law to know the content of an instrument which he signs, whether he reads it or not. IAC contends that it is only where fraud, accident, or mistake intervenes that one may be relieved of his obligation.

■ Those two rules were distinguished from the facts to which Lorraine testified in *Western Cas. & Sur. Co. of Fort Scott v. Wunderlich*, 447 S.W.2d 1, 3–4[1] (Mo. App.1969). The court held that the rules set out above and relied upon by IAC are not applicable when the applicant gave the correct information to the agent of the insurance company and the agent made a mistake in preparing the application. The court held that when the agent makes the mistake the principal is bound by the mistake and is estopped to assert the answer in the application as a ground to void the policy. In this case, Lorraine testified that she told Robert Lutz that Manuel saw his doctor every three to four months for diabetes and for his stroke. From this the jury could have found that Lorraine gave the correct information to Robert Lutz but that he made a mistake in checking the boxes opposite the medical questions. In that situation IAC is estopped to assert the answers given in the application as a ground to void the policy. Under the holding in *Wunderlich* and the cases cited therein in support of its holding, Lorraine was entitled to recover because her evidence indicated that she had given the correct information to Robert Lutz and that he made a mistake in completing the application.

■ IAC also contends that the court erred in striking IAC's pleaded defense of fraud. IAC filed an answer to Lorraine's action on the policy in which it pleaded a defense of fraud. Lorraine filed a reply to IAC's answer in June, 1989. In December, 1990, Lorraine filed a motion to strike IAC's fraud defense because the allegations of fraud were not pleaded with particularity. Immediately prior to trial the court ordered IAC's pleaded defense of fraud to be stricken. Lorraine did not file a motion to make the pleading of fraud more definite and certain at any time. In *Clark v. Olson*, 726 S.W.2d 718, 719[2] (Mo. banc 1987), the court held that a pleading of fraud is subject to a motion for more definite statement as authorized by Rule 55.27(d). The court further held that by failing to make such a motion, a defendant is deemed to have waived any objection as to the particularity of the averments of fraud under Rule 55.27(f). Here, Lorraine failed to file a motion for more definite statement and hence waived any objection to the pleading of fraud.

Rule 55.27(e) requires a motion to strike to be filed before a party responds to a pleading. Lorraine had filed a reply to IAC's affirmative defense of fraud, and was thereby precluded from filing a motion to strike. For these reasons the court erred in sustaining the untimely motion to strike.

■ Having found error, the next question is whether or not IAC suffered any prejudice. This requires a review of the submission of IAC's defense and the impact which striking its fraud defense had on its ability to defend. At the request of IAC the court gave an instruction in the form of MAI 32.20 (1991). This instruction required the jury to find that Manuel repre-

sented in the application that he had not consulted a physician in the last three years "except for routine physicals," that the representation was false because he had consulted a physician for a stroke, and that the stroke contributed to his death. The Notes On Use to MAI 32.20 state that such instruction is appropriate only where material representations made in an application for life insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or the policy provides that the falsity of the representations shall avoid the policy.

In *Dixon v. Business Men's Assurance Co. of America*, 365 Mo. 580, 285 S.W.2d 619, 625[5, 6] (1955), the court stated that when:

[M]aterial representations made in an application for a policy of life insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or provides that the falsity of the representations shall avoid the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made.

\* \* \* \* \* \*

But where there is no such warranty or provision in the policy a misrepresentation, in order to avoid the policy must have been fraudulently made. (quoting *Houston v. Metropolitan Life Ins. Co.*, 232 Mo.App. 195, 205, 97 S.W.2d 856, 860 (1936)).

IAC defended by asserting that the answers given in the application for life insurance were warranted by Manuel to be true and the company needed only to show that the answers were made by the applicant and were not true. Under the holding in *Dixon* that would be sufficient to avoid a policy even if the false answers were innocently made. On the other hand, if there is no warranty in the policy concerning the answers in an application, the company must show that the answers were false and were fraudulently made by the applicant. This distinction in the defenses which may be asserted to a claim on a life insurance policy is correctly set out in the Notes on Use and Comments under MAI 32.20.

There is no statement in the application that Manuel warranted the answers given in the application to be true, nor was the policy conditioned upon the truth of the representations. It follows that IAC was not entitled to have MAI 32.20 given because that instruction is only applicable when the answers are warranted to be true, or the policy is conditioned on truthful answers. However, no one complains about the instruction that was given.

MAI 32.19 is the instruction which is to be given to submit the defense of misrepresentation of material facts when there is no warranty and the policy is not conditioned on the truth of the answers. That is the instruction IAC would have submitted under its fraud defense. In that instruction the jury is required to find that the applicant made a false answer, that the applicant intended that the company rely upon the representation in issuing the policy, that the representation was false, that the applicant knew the representation was false or did not know whether it was true or false, that the company relied upon the representation in issuing the policy, and that the matter misrepresented contributed to the death of the decedent. In comparing MAI 32.19 with MAI 32.20 it is apparent IAC carried a lesser burden under MAI 32.20. By submitting its defense as it did, IAC was able to defend by attempting to show only that Manuel made the answers on the application and that such answers were false. Under a fraud defense IAC would have been required to show all the elements of fraud, which was certainly a greater burden than it carried under the instruction actually given. Although the jury found against IAC, it cannot show that the striking of its fraud defense required it to carry any heavier burden or made it more difficult to present its defense. In that circumstance IAC cannot show any prejudice resulting from the court's action in striking its fraud defense.

Significantly, IAC does not argue that it was prejudiced by the striking of its fraud defense and from the actual conduct of the trial IAC did not suffer any prejudice by the striking of such defense.

## CLAYCO'S APPEAL

██ IAC filed a cross-claim against Clayco in which it alleged that Clayco had agreed to indemnify and hold IAC harmless for any loss, liability, cost, or expense which IAC may incur by reason of Clayco enrolling a debtor for insurance if the debtor is known by Clayco not to be in sound health. The cross-claim prayed that Clayco be required to indemnify and hold IAC harmless for any loss or liability which it would incur by reason of Lorraine's claim. The cross-claim was submitted to the court for decision after the jury verdict was returned and the court entered judgment in favor of IAC and against Clayco for the amount of the jury verdict plus interest. Clayco contends that the judgment against it was not supported by substantial evidence because there was no evidence that Clayco knew that Manuel was not in sound health at the time he signed the application and IAC was required to present expert testimony to show that Manuel was not in sound health when he signed the application.

Clayco relies on the definition of "sound health" found in *Chambers v. Metropolitan Life Ins. Co.*, 235 Mo.App. 884, 138 S.W.2d 29, 38[11] (1940), in which this court stated that the phrase sound health is not to be taken literally to mean absolute freedom from bodily infirmity. This court held that sound health means generally the absence of any disease of a serious nature as contrasted with a temporary ailment. *Id.* An expert testifying about Manuel's condition would not show knowledge of his health by Clayco and was therefore unnecessary. The evidence set out herein and Manuel's appearance with his shuffled walk and slurred speech, together with the admission by Robert Lutz that he knew that Manuel "had a very serious illness" was sufficient to support the judgment in favor of IAC against Clayco.

## DISPOSITION

The judgment in favor of Lorraine against IAC is affirmed and the judgment in favor of IAC against Clayco is affirmed.

Costs on appeal are divided equally between IAC and Clayco.

All concur.