Carl Donald BENTON and Lucille Benton, Plaintiffs–Appellants,

v.

CITY OF ROLLA, Defendant–Respondent.

No. 18620.

Missouri Court of Appeals, Southern District, Division One.

March 25, 1994.

Joseph A. Lott, Clayton, for plaintiffs-appellants.

Dan L. Birdsong, Thomas, Birdsong & Clayton, P.C., Rolla, for defendant-respondent.

Before PARRISH, C.J., and SHRUM and MONTGOMERY, JJ.

MONTGOMERY, Judge.

On October 22, 1993, this district filed an opinion affirming the judgment. Thereafter, this district denied Plaintiffs–Appellants' motion for rehearing or to transfer to the Supreme Court. Plaintiffs–Appellants then filed an application for transfer with the Supreme Court, which was sustained on December 21, 1993. On March 22, 1994, the Supreme Court entered the following order:

"Cause ordered retransferred to the Missouri Court of Appeals, Southern District." With the addition of this paragraph our original opinion is readopted. It is set out hereunder.

Plaintiff and his wife filed suit against the City of Rolla for his personal injuries and her loss of consortium. Plaintiff's fourth amended petition alternatively alleged claims against the City for injuries due to an explosion of an air compressor tank on premises reserved for common use by the City and employees of Plaintiff's employer (Count I), for negligently supplying Plaintiff a dangerous instrumentality (Count II), and for injuries provided under § 537.600.1(2)[1] (Count III). Count IV embodied the loss of consortium claim.

The trial court dismissed Counts I and II after ruling that Plaintiff's only cause of action was pursuant to § 537.600.1(2). The court also ordered Plaintiff to make more definite and certain Count III, which Plaintiff later designated as Count I of his fifth amended petition.

After a trial on Plaintiff's claim under § 537.600.1(2) and for loss of consortium, the jury returned a verdict in favor of the City. Following denial of Plaintiff's motion for new trial, this appeal was perfected.

Plaintiff's single point urges that the trial court erred in dismissing Counts I and II because (a) the City was acting in a proprietary capacity when it furnished an air compressor and tank to its lessee, Plaintiff's employer; (b) on the date of Plaintiff's injuries, the 1985 amendment to § 537.600 was not in effect, and prior to the amendment the law permitted an action against a municipality for negligence caused while the municipality was performing a proprietary function; (c) at the time of Plaintiff's injuries he had two possible claims against the City, namely, negligently maintaining a dangerous condition on premises reserved for common use (MAI 22.-05) and negligently furnishing a dangerous instrumentality (MAI 25.06—now 25.10(B)) which were vested substantive rights; and (d) the retroactive application of § 537.600.2,

---

1. Statutory references are to RSMo 1986, unless   otherwise indicated.

as amended in 1985, deprived Plaintiff of those rights, in violation of Article I, Section 13, of the Missouri Constitution.

The City does not dispute Plaintiff's statement of the facts which follow. Plaintiff commenced his employment as a truck mechanic with Hubbard Cartage, Inc., on the day before his injuries. At that time Hubbard was a tenant of the City, leasing space at the City's airport maintenance facility. Hubbard's leased space was in the same building and adjacent to premises used by the City as a maintenance facility for the airport. The lease provided for Hubbard's use of an air compressor and air storage tank located in the City's portion of the building. A wall separated Hubbard's leased space from the area occupied by the City. The compressor and tank were owned and maintained by the City. Compressed air for use by Hubbard's mechanics was fed to Hubbard's premises via a pipe through a hole in the wall.

The City had control of the area where the air compressor and tank were located, but Hubbard's employees were allowed access to that equipment. On July 9, 1985, a City employee allowed Plaintiff access to the air compressor and Plaintiff adjusted the pressure of the air storage tank. A short time after doing so, and while still on the City's premises, Plaintiff was injured when the tank exploded.

In ruling Defendant's motion to dismiss Counts I and II, the trial court determined that "Plaintiff's action lies only within the statutory provisions of Section 537.600 R.S.Mo" and "the common law action as plead [sic] herein by Plaintiff was foreclosed by the enactment of the various changes and amendments in said Section 537." [2] The trial court concluded the 1985 amendment was procedural in nature and applied retroactively to Plaintiff's cause of action, relying on *Wilkes v. Missouri Highway & Transp. Comm'n*, 762 S.W.2d 27 (Mo. banc 1988), and *Mispagel v. Missouri Highway & Transp. Comm'n*, 785 S.W.2d 279 (Mo. banc 1990).

As noted, Plaintiff's injury occurred July 9, 1985, which was prior to the effective date of the 1985 amendment. It is this circumstance which causes the parties to strongly disagree. The City does not dispute it was acting in a proprietary capacity by leasing space to Hubbard and furnishing the air compressor and tank for use by Hubbard's employees. There is no dispute that the City, a municipal corporation, is a public entity within the meaning of §§ 537.600 and 537.610. The City seeks to uphold the trial court's ruling on the basis that (1) § 537.600, RSMo 1978, brought all actions against a public entity for a dangerous condition of its property within the scope of that statute, and (2) the 1985 amendment applied retroactively because the amendment did not destroy any of Plaintiff's substantive rights but simply clarified the legislature's previous intent for the effect of the statute.

In contrast, Plaintiff urges that on July 9, 1985, the City was not protected by sovereign immunity from claims arising out of its proprietary functions, and he was entitled to plead claims based on common law theories of negligence in addition to his claim under § 537.600.1(2), RSMo 1978.

Resolving Plaintiff's point requires an understanding of the history of the doctrine of sovereign immunity in Missouri. Prior to 1977, "[t]he state and its political subdivisions were immune from suit for tort under the common law doctrine of sovereign immunity." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 202 (Mo. banc 1992). "A municipal corporation, distinct from the state and its political subdivisions, was deemed to exercise proprietary as well as governmental functions, and so was immune only when functioning in a governmental capacity." *Id.*

In *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo. banc 1977), the Missouri Supreme Court abrogated the common law doctrine of sovereign immunity. The legislature responded with the enactment of §§ 537.600 to 537.650, RSMo 1978, which reinstated the doctrine as it existed prior to *Jones*. However, § 537.600 expressly waived

**2.** After the 1985 amendment, § 537.600 was subsequently amended in 1989 with the addition of provisions not relevant to this appeal.

immunity for (1) torts arising out of governmental operation of motor vehicles, and (2) dangerous conditions of a public entity's property. Section 537.610 allowed the State and its political subdivisions to purchase liability insurance for tort claims made against either entity.

Thereafter, in *Bartley v. Special Sch. Dist. of St. Louis City,* 649 S.W.2d 864 (Mo. banc 1983), the Supreme Court held sovereign immunity was waived only in circumstances (1) and (2) enumerated in the statute and only to the extent the public entity was covered by liability insurance. The *Bartley* court also concluded the 1978 enactment preserved the governmental/proprietary distinction. *Id.* at 868–69.

After the *Bartley* decision, the legislature amended § 537.600, effective September 28, 1985, with the addition of subsection 2 which expanded the waiver of sovereign immunity in circumstances (1) and (2), providing for such waiver whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity was covered by liability insurance.

Turning to the merits of this case, Plaintiff's argument is supported by the holding of this Court in *State ex rel. Wartick v. Teel,* 737 S.W.2d 258 (Mo.App.1987), and by *Schulz v. City of Brentwood,* 725 S.W.2d 157 (Mo.App.1987). In *Teel,* the third-party plaintiffs filed a petition for indemnification or contribution against the City of Joplin alleging negligence for failure to keep an alley in a safe condition. The trial court sustained the city's motion to dismiss finding that the city was not insured against the liability asserted. This Court reinstated the third-party petition stating "[t]he purpose of the two exceptions contained in § 537.600 is to waive immunity in the instances therein specified when, before *Jones,* such immunity would have been recognized.... By waiving immunity in the instances therein specified, the two exceptions contained in § 537.600 do not create sovereign immunity where it did not exist before *Jones.*" *Id.* at 259 (citations omitted). Continuing, we said:

The doctrine of sovereign immunity extended to governmental functions of municipalities but not to proprietary functions. "With two express exceptions, § 537.600 reinstates sovereign immunity as it existed before *Jones. By implication, § 537.600 reinstated the governmental-proprietary test as well,* and this is the law in Missouri today. *State ex rel. Allen v. Barker,* 581 S.W.2d 818, 825 (Mo. banc 1979)." *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 295 (Mo.App.1983) (emphasis added)....

....

... It is clear the distinction between governmental and proprietary functions is applicable to the doctrine of sovereign immunity in respect to municipalities. Before *Jones,* the duty of the city with respect to its streets and alleys was a proprietary function. It yet is. On June 29, 1984, [the date of plaintiff's injury] the doctrine of sovereign immunity did not extend to a breach of that duty.

*Id.* 725 S.W.2d at 260 (citations omitted).

*Schulz* held it was not necessary to determine whether the alleged dangerous condition of a municipality's day care center fell within § 537.600.1(2) because the petition sufficiently alleged the city was not entitled to sovereign immunity since it was acting in a proprietary manner. 725 S.W.2d at 160–61. In both *Schulz* and *Teel* the torts occurred before 1985, and in each case, the Court's interpretation of § 537.600 was made without reference to the 1985 amendment.

Here, the City candidly admits *Teel* supports Plaintiff's position unless *Wollard, supra, Oldaker v. Peters,* 817 S.W.2d 245 (Mo. banc 1991), and *Wilkes, supra,* require a different result.

In *Wollard,* plaintiff's injury apparently occurred after the effective date of the 1985 amendment. This factual distinction is significant because the Supreme Court interpreted § 537.600 after the 1985 amendment and held the legislature intended "to encompass a claim against a municipal corporation public entity for injury resulting from a dangerous condition of its sidewalk within the scope of sovereign immunity. §§ 537.600 through 537.650." 831 S.W.2d at 205. In reaching this conclusion, the Court said,

"*Teel* is of limited value in determining the current status of § 537.600 because it interpreted the meaning of § 537.600 as it existed prior to the 1985 amendment." *Id.* 831 S.W.2d at 204 n. 1. Regarding *Schulz,* the Court noted that case interpreted § 537.600 without reference to the 1985 amendment because the injury occurred before 1985. *Id.* at 205.

Therefore, *Wollard* is not fatal to Plaintiff's contention here unless, as the City contends, the 1985 amendment applies retroactively to Plaintiff's claim. *Wilkes* and *Oldaker* provide insight on that issue.

In *Wilkes,* the Supreme Court construed § 537.600, as amended in 1985, determining that the statute provided a remedy for a cause of action whose remedy had been previously barred. The plaintiff in *Wilkes* sought damages for injuries resulting from a dangerous condition of a state highway and bridge. His injuries occurred in 1984, and at that time the Missouri Highway and Transportation Commission was immune from suit. The Court said that "[a]n act abrogating sovereign immunity does not create a new cause of action but provides a remedy for a cause of action already existing for which redress could not be had because of the immunity." 762 S.W.2d at 28. The Court further stated:

> Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit.

*Id.* In describing the proper canons for construing statutory provisions, the Court said: "A statutory provision that is remedial or procedural operates retrospectively unless the legislature expressly states otherwise." *Id.* The Court held that "Section 537.600, RSMo 1986, is retroactive and applies to plaintiffs' claim" because the statute is remedial and contains neither express nor implied provisions manifesting a legislative intent that it apply only prospectively. *Id.*

*Oldaker* involved an injury prior to 1985 and followed the view of *Wilkes* regarding the retroactive effect of the 1985 amendment. The Court noted that "in *Wilkes* the Court was considering a remedial statute which neither created, modified nor abrogated a substantive right or duty." 817 S.W.2d at 250.

Therefore, *Wilkes* and *Oldaker* hold that the 1985 amendment applied retroactively because the amendment provided a remedy where none previously existed and in that respect the statute was procedural. However, On July 9, 1985, Plaintiff was entitled to proceed against the City on the theories alleged in Counts I and II according to *Teel* and *Schulz;* yet the City urges that § 537.-600 applies retroactively to take away that right. Clearly, *Wilkes* and *Oldaker* do not support the City's position. Plaintiff's cause of action arose on the date of his injury. *Oldaker,* 817 S.W.2d at 249. At that time, as before *Jones,* the City had no immunity from a breach of its duty arising out of a proprietary function. *Teel,* 737 S.W.2d at 260. Plaintiff's right to sue for such a breach was a substantive right. *Wilkes,* 762 S.W.2d at 28. The 1985 amendment to § 537.600 did not create, modify nor abrogate a substantive right or duty. *Oldaker,* 817 S.W.2d at 250. Therefore, the trial court erroneously dismissed Counts I and II.

Having found trial court error, we must determine the prejudicial effect of the error. For error to be reversible, there must be prejudice to the complaining party. *Delaporte v. Robey Bldg. Supply, Inc.,* 812 S.W.2d 526, 535 (Mo.App.1991). In addition, an appellate court is not to reverse a judgment unless the error committed by the trial court against the appellant materially affected the merits of the action. *Lewis v. Wahl,* 842 S.W.2d 82, 84–85 (Mo. banc 1992); § 512.160.2; Rule 84.13(b). The City alleges Plaintiff suffered no prejudice, even if the trial court erred, because the elements and burden of proof under the claim submitted to the jury were the same as under the theories advanced in Counts I and II.

The verdict directing instruction submitted to the jury was patterned after MAI 31.16. It reads as follows:

## Instruction No. 6

Your verdict must be for Plaintiff CARL DONALD BENTON if you believe:

FIRST, There was a defective weld weakened by corrosion due to defective design, said weld attaching the bottom to the wall of the air compressor pressurized air tank and as a result said pressurized air tank was not reasonably safe; and,

SECOND, Defendant knew or by using ordinary care should have known of this condition in time to remove it from service or warn of such condition; and,

THIRD, Defendant failed to use ordinary care to remove it from service or warn of such condition; and

FOURTH, As a direct result of such failure Plaintiff CARL DONALD BENTON sustained damage.

The verdict in favor of the City established that the jury disbelieved one or more of the propositions in Instruction No. 6. As will be demonstrated, such disbelief would have been fatal to a finding for Plaintiff under a submission of either MAI 22.05 or MAI 25.-10(B).

Had the trial court not dismissed Counts I and II, Plaintiff does not dispute he would have been required to elect between the verdict director as given, MAI 22.05 or MAI 25.10(B). A comparison of these three instructions convinces us the trial court's error failed to materially affect the outcome of this case.

First, a submission under both MAI 31.16 and MAI 22.05 requires a finding that property (air tank) "was not reasonably safe." MAI 25.10(B) requires a finding that the instrumentality was "dangerous when put to a reasonably expected use." Plaintiff does not attempt to demonstrate any prejudice resulting from the submission of "not reasonably safe" as opposed to "dangerous" under MAI 25.10(B). In fact, during oral argument Plaintiff conceded his preferred submission would have been under MAI 22.05 which contains identical language in paragraph First to MAI 31.16.

Second, a submission under MAI 25.10(B) would have required a finding that the instrumentality "was put to a reasonably expected use," which bears solely on Plaintiff's

conduct. Obviously, Plaintiff had a lesser burden under the instruction submitted.

Third, all three instructions require a finding that Defendant had actual or constructive notice of the condition. Both MAI 31.16 and MAI 25.10(B) use the same phrase "knew or by using ordinary care should have known" while MAI 22.05 uses "knew or by ordinary care could have known." Regardless of Plaintiff's contention that "could" is different from "should" he demonstrates no prejudice from the use of "should." A landlord's liability in a case submitted under MAI 22.05 arises only if the landlord has actual or constructive notice of the alleged defect. *Peterson v. Brune*, 273 S.W.2d 278, 282 (Mo.1954). Therefore, actual or constructive notice was a requirement in all three instructions regardless of the use of "could" or "should."

Fourth, all three instructions conclude with the requirement of a finding that Defendant failed to use ordinary care and as a direct result of such failure, Plaintiff sustained damage.

In *Barrera v. Individual Assur. Co.*, 829 S.W.2d 14 (Mo.App.1992), the trial court erroneously struck the insurer's pleaded defense of fraud. In finding no prejudice to the insurer, the appellate court said:

Under a fraud defense IAC would have been required to show all the elements of fraud, which was certainly a greater burden than it carried under the instruction actually given. Although the jury found against IAC, it cannot show that the striking of its fraud defense required it to carry any heavier burden or made it more difficult to present its defense. In that circumstance IAC cannot show any prejudice resulting from the court's action in striking its fraud defense.

*Id.* at 18.

The instant case is like *Barrera* in that Plaintiff did not carry a heavier burden under MAI 31.16 nor was it more difficult for Plaintiff to present his case under the theory submitted. For those reasons, we hold

Plaintiff was not prejudiced as a result of the dismissal of Counts I and II.[3]

Judgment affirmed.

PARRISH, C.J., and SHRUM, J., concur.

**3.** As noted earlier, Plaintiff does not appeal from the verdict and judgment in favor of the City. Therefore, even if this Court decided to reverse and remand for new trial, the res judicata effect of the earlier judgment would have squarely faced Plaintiff on retrial.